60657. SLAPPEY BUILDERS, INC. et al. v. FEDERAL
DEPOSIT INSURANCE CORPORATION.

McMURRAY, Presiding Judge.
On May 8, 1974, Slappey Builders, Inc. executed a real estate note and a deed to secure debt in favor of Hamilton Mortgage

Corporation, a Tennessee corporation, as lender, in the amount of $46,400. Certain improved real property therein described as located in DeKalb County was the security for the indebtedness. The note was individually guaranteed by T. G. Slappey and J. W. Slappey. The note was subsequently modified, but that issue is not involved here.

On October 25, 1975, Hamilton Mortgage Corporation conveyed an undivided 99% interest in the note and security deed to Hamilton National Bank of Chattanooga.

On December 31, 1975, Slappey Builders, Inc. had an opportunity to sell the property for $52,500. It contacted Hamilton National Bank with reference to this sale in an attempt to get the bank to accept the net proceeds from the sale as a total payoff; that is, in the amount of $48,278.50, and also to get the bank to agree to make the permanent loan. On January 2, 1976, Hamilton National Bank declined to finance a permanent loan but agreed to accept the total net proceeds from the sale, "but in no event, will it be less than $48,300.00" However, the sale was never consummated. In the meantime the bank was declared insolvent on February 16, 1976, by the Comptroller of the Currency, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver.

On February 20, 1976, Hamilton Mortgage Corporation filed bankruptcy proceedings. The appointed trustee in bankruptcy, in his capacity as trustee, conveyed the remaining 1% to the Federal Deposit Insurance Corporation. The 99% interest in the subject note and security deed was later conveyed by the Federal Deposit Insurance Corporation as receiver to the Federal Deposit Insurance Corporation in its corporate capacity pursuant to 12 USCA § 1823 (e).

A real estate broker obtained another prospective purchaser for the property. The property was then sold on May 3, 1977, and FDIC received $48,112.50 on May 10, 1977. FDIC now contends this left a principal balance due of $13,863.81 plus interest. FDIC then informed the Slappeys by a "ten day letter" that the provisions of the note relative to the payment of attorney fees would be enforced unless the total unpaid principal and interest were paid within 10 days of the date of the receipt of the letter.

On February 7, 1979, FDIC, a liquidator of Hamilton National Bank, filed this action against Slappey Builders, Inc., T. G. Slappey, and J. W. Slappey, seeking judgment for the balance of the note alleged to be $13,863.81, plus interest thereon in the amount of $3,020.23 as of December 15, 1978, which it contends continues to accrue at a per diem rate. In addition, it sought attorney fees in the amount of 10% of the principal and interest due and owing on said note.

The defendants answered, in general denying the claim, ad-

mitting jurisdiction, the making of the note and the modification of same, although denying that the guarantor defendants unconditionally guaranteed the modified note, admitting, however, the payment of $48,112.50 but denying that there was any balance due on the indebtedness. Defendants also filed affirmative defenses of lack of consideration, failure of consideration, the barring of the claim, usury, estoppel, increasing the risk, fraud on the part of the plaintiff and its predecessors, novation, release, and, in substance, accord and satisfaction. They also sought by counterclaim a judgment for damages, actual and punitive, and reasonable attorney fees by reason of the alleged fraud of the plaintiff.

After discovery, plaintiff moved for summary judgment based upon certain affidavits. By affidavit, in opposition to plaintiff's motion for summary judgment, one of the real estate broker's agents deposed that Slappey advised it would accept any offer on which the construction lender would agree to accept the proceeds of the sale in full satisfaction of the construction loan. She deposed further that she and her broker discussed the sale by telephone with various persons connected with the Federal Deposit Insurance Corporation and "it was agreed that the FDIC would accept the proceeds of the sale in full satisfaction of the construction loan note." The motion for summary judgment was granted, and defendants appeal. *Held:*

1. Defendants ardently urge on appeal that the trial court based its judgment upon a "misinterpretation" and "misapplication" of a federal statute (12 USCA § 1823(e)), which error, it is argued, was induced by "confusing" comments of plaintiff's counsel. Before the trial court defendants contended (i) that the earlier-noted agreement between Hamilton National Bank and themselves was binding upon plaintiff and (ii) that plaintiff, through certain of its agents purportedly acting on plaintiff's behalf, entered into a separate, binding agreement with defendants to accept the proceeds of a sale of the subject property as full satisfaction of the balance then owing on the construction loan, i.e., that a novation or an accord and satisfaction had occurred.

Defendants, in their supplemental brief on appeal, have expressly abandoned trial contention (i) above and admit that the earlier agreement between Hamilton National Bank and themselves is not binding upon plaintiff. We therefore do not consider that issue here. Defendants do, however, assert error in the trial court's reliance upon Title 12 USCA § 1823(e) in passing upon argument (ii) above as set forth at the hearing. That statute provides, in pertinent part, as follows: "No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC in its separate corporate capacity] in any asset acquired by it under this section, either as

security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

Specifically, defendants contend that the strictures of 12 USCA § 1823(e) apply only as to agreements between an obligor/debtor and an insolvent bank, and not as to direct agreements between that obligor/debtor and the FDIC such as defendants claim to have been entered here. In support of their argument that the trial court mistakenly relied upon 12 USCA § 1823(e), defendants note the following remarks of the court prior to granting plaintiff's motion for summary judgment: "Assuming, to take it to a ridiculous extreme, that the FDIC had an employee that got on the phone one morning and called up a list of debtors and said, 'Look, just forget this obligation you owe the FDIC; just forget about it entirely,' I think that would put the debtor on notice that he might ought to get something a little more concrete of that in writing, approved by the Board of Directors, a real binding, written novation.

"I sympathize with his position, but, obviously, the employee of the FDIC who did that ridiculous thing I have just described in the hypothetical would not thereby bind the FDIC, and I think the same analogy would apply here; that if these three employees of the FDIC did call him up and say, we will just accept the proceeds of the sale of the house and that will cancel out the note, don't worry about it; then that would not be binding on FDIC under 1823."

We noted in *West v. Federal Deposit Ins. Corp.,* 149 Ga. App. 342, 344 (1) (254 SE2d 392), affd. 244 Ga. 396 (260 SE2d 89) that ". . . [USCA § 1823(e)] . . . is apparently a codification of the decision in D'Oench, Duhme & Co., Inc: v. FDIC, 315 U. S. 447 (62 SC 676, 86 LE 956) which held that oral agreements between debtors and failed banks will not be enforced against the FDIC." It thus follows that the rigid criteria of 12 USCA § 1823(e) apply only as to agreements between debtors and insolvent insured banks, and not as to direct agreements between those debtors and the FDIC after having purchased the assets of a failed bank. To the extent therefore that the trial court relied upon 12 USCA § 1823(e) in granting plaintiff's motion for summary judgment in the face of defendants' allegation of a direct agreement with FDIC it was error. "Nevertheless, where the judgment of the trial court is proper and legal for any reason, it will be

affirmed, regardless of the reason assigned. [Cits.]" *Carroll v. Johnson,* 144 Ga. App. 750, 753 (4) (242 SE2d 296). We therefore proceed to analyze other appropriate bases for the trial court's judgment.

2. Defendants contend on appeal that defendants' real estate agent and certain of plaintiff's employees through a series of telephone conversations agreed that plaintiff would accept the proceeds from a sale of defendants' property as full satisfaction of defendants' debt obligation evidenced by the note plaintiff purchased as a result of Hamilton National Bank's insolvency. Defendants thus cling tenaciously in their briefs to their defenses of novation and of accord and satisfaction and urge that there exist unresolved issues of material fact relevant thereto.

Plaintiff correctly notes that accord and satisfaction must be set forth "affirmatively" as a defense in the defendants' answer and cannot be raised first by affidavit in support (or opposition) of a motion for summary judgment. See Code Ann. § 81A-108 (c) (Ga. L. 1966, pp. 609, 619; 1967, pp. 226, 230; 1976, pp. 1047, 1048, effective Sept. 6, 1976); *First National Bank v. McClendon,* 147 Ga. App. 722, 723 (250 SE2d 175). In the answer and counterclaim defendants did not plead accord and satisfaction as an affirmative defense but did affirmatively plead the more general defense of novation. From a review of defendants' counterclaim, it is clear that the novation specifically pleaded was an alleged accord and satisfaction. We therefore deem both defenses to have been pleaded with sufficient specificity to be considered by this court on appeal. Having so found, "[i]t was incumbent on [plaintiff] to pierce [defendants'] defense of accord and satisfaction. *Meade v. Heimanson,* 239 Ga. 177 (236 SE2d 357) (1977)." *Jones v. Federal Deposit Ins. Corp.,* 151 Ga. App. 619, 620 (1) (260 SE2d 751).

The consideration of these defenses is of particular importance herein in that it is undisputed that defendants did execute the note evidencing the indebtedness which plaintiff seeks to collect by virtue of this litigation. It is further undisputed that plaintiff currently holds all of the right, title and interest that Hamilton Mortgage Corporation originally held in said note. As such, plaintiff has established a prima facie right to the judgment it seeks herein, and the burden has shifted to defendants to interpose a viable defense. See Code § 109A-3—307 (2) (Ga. L. 1962, pp. 156, 256); *Freezamatic Corp. v. Brigadier Industries Corp.,* 125 Ga. App. 767, 768 (189 SE2d 108).

"A novation or accord and satisfaction is in itself a contract and must have all the elements of a de novo contract. [Cits.]" *Mayer v. Turner,* 142 Ga. App. 63, 64 (1) (234 SE2d 853). In opposing plaintiff's

motion for summary judgment defendants produced affidavits of their real estate agent and broker, both of whom deposed that on multiple occasions they had "talked on the telephone with persons holding themselves out as representatives of the FDIC" and that said "purported representatives of the FDIC" had agreed to accept the proceeds of a given sale of the subject property as full satisfaction of defendants' then outstanding indebtedness to plaintiff. Contrariwise, plaintiff, in support of its motion, produced affidavits of each of three alleged agents of plaintiff named in defendants' opposing affidavits. Each of the plaintiff's affiants deposed that he was employed by plaintiff at the times relevant to this litigation and was involved with the liquidation of the assets of Hamilton National Bank, one of which was defendants' debt, but that he did not recall any communications with defendants' affiants, or with anyone, regarding plaintiff's possible acceptance of the proceeds of a sale of the subject property as full satisfaction of defendants' debts. Further, each of plaintiff's affiants deposed that it was the FDIC's strict policy not to accept less than the full amount due on any claim, and that any agreement to compromise a debt owed to the FDIC would have to be authorized and approved by the FDIC's central office in Washington, D. C.

The evidence before the trial court thus called into question the very existence of any direct agreement between plaintiff and defendants. This clearly gave rise to genuine issues of material fact sufficient to survive plaintiff's motion for summary judgment. Accordingly, it was error to grant plaintiff's motion unless there existed legal grounds that would invalidate the novation or accord and satisfaction alleged by defendants. Plaintiff in its brief avers and discusses five such legal grounds arguably voiding the alleged agreement. We consider them in seriatim.

(a) Plaintiff first contends that the alleged accord and satisfaction was not supported by consideration. We disagree. Defendants have argued that the house under construction on the subject property was incomplete at the time of the alleged accord and that in reliance upon that accord with plaintiff, defendants expended additional sums to complete the house so as to make it more marketable. This argument is supported by the affidavit of defendants' real estate agent, to wit: "Based upon your affiant's agreement with the FDIC, defendants finished construction on the house . . . and prepared the house for occupancy by the purchasers."

Plaintiff argues that "[i]t is an elementary principle that the construction loan contemplated and was for the purpose of . . . [defendants'] . . . construction of the house." Plaintiff has, however, referred us to no evidence in the record to support such a conclusion. Moreover, defendants have argued that in reliance upon their alleged

agreement with plaintiff they expended personal and/or corporate funds to place the house in marketable condition. We are aware of no authority (and plaintiff has cited us no authority) that would require the borrower of a construction loan to complete the anticipated construction, at additional cost if need be, as a matter of law. We are therefore of the view that defendants' completion of the subject house was adequate consideration for the accord alleged herein.

Moreover, we find that plaintiff's counsel tacitly admitted to the existence of such new consideration when she argued, "Now, I think the Court can take judicial notice of the real estate crunch which . . . [defendants' counsel] . . . referred to, but it was Mr. Slappey [defendant] and his client's decision not to let the property go into foreclosure. Certainly, that was one of their options. Nobody foreclosed them. *To go back in and put their own money in, it was their option to do that.* The debt was due, and, in fact, obviously they realized the debt was due and owing and trying to come to some agreement." (Emphasis supplied.)

(b) Plaintiff next argues that the alleged accord was unenforceable as it was uncertain, indefinite and lacked mutuality.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which it can operate." Code § 20-107. The agreement alleged by defendants and attested to by supporting affidavits contained each of these essential elements.

Moreover, it is undisputed that the subject property was sold and that the entire proceeds of the sale were handed over to plaintiff. It is further uncontradicted that plaintiff accepted said proceeds and released the property from the deed to secure debt thereon by quitclaim deeds. It is at least arguable, therefore, that the alleged agreement has been fully performed and that any indefiniteness in its terms has been cured by that performance. See *Pine Valley Apartments Limited Partnership v. First State Bank,* 143 Ga. App. 242, 244 (237 SE2d 716).

" 'The law leans against the destruction of contracts on the ground of uncertainty.' *Pierson v. General Plywood Corp.,* 76 Ga. App. 853, 855 (47 SE2d 605)." *Pine Valley Apartments Limited Partnership v. First State Bank,* 143 Ga. App. 242, 245, supra. Accordingly, we find it imprudent to nullify defendants' alleged accord on these grounds.

(c) Plaintiff next contends that the alleged agreement, by definition, concerned a sale of land, and, being oral, was violative of the Statute of Frauds and hence unenforceable. Code § 20-401 (4). In so arguing, however, plaintiff has misconstrued the alleged accord.

That agreement was not a contract for or concerning the sale of real property per Code § 20-401 (4), but was an agreement that plaintiff would accept the proceeds of such a sale as full satisfaction of a certain indebtedness. The mere fact that the funds defendants agreed to provide were to be generated by the sale of the subject property was not sufficient to bring the alleged agreement within the Statute of Frauds on these grounds.

(d) Plaintiff further asserts that defendants' real estate agent lacked authority from defendants to enter the alleged accord with plaintiff. As earlier noted, the burden was upon plaintiff to pierce defendants' defense of accord and satisfaction. From a review of the record we find no evidence that defendants' real estate agent lacked the requisite authority to enter the alleged accord with plaintiff. The affidavit of defendant T. G. Slappey, on the other hand, states that the subject property was listed for sale with the realtors "with the express understanding that any sale would have to be contingent upon the Hamilton National Bank (*and later the FDIC*) accepting the net proceeds of the sale as full satisfaction of the note . . ." (Emphasis supplied.) Moreover, the residential sales contract negotiated by defendants' agent included as a "special stipulation" that the contract was signed by defendants "contingent upon FDIC accepting net proceeds from this contract as full pay off of [the subject] loan indebtedness . . ."

Thus, there clearly exists evidence tending to demonstrate that the real estate agent acted under proper authority in entering the alleged agreement with plaintiff. Plaintiff's argument to the contrary is without merit.

(e) Finally, plaintiff urges that the alleged accord and satisfaction must fail as plaintiff's employees alleged to have entered the agreement lacked the requisite authority to bind the FDIC in such a manner.

"Existence of an agency may be established by proof of circumstances, *apparent relations,* and conduct of the parties. *Cable Company v. Walker,* 127 Ga. 65 (56 SE 108)." (Emphasis supplied.) *Larkins v. Boyd,* 205 Ga. 69, 72 (1) (52 SE2d 307). As earlier noted, defendants have submitted affidavits of their real estate agent and broker swearing that each of them had had telephone conversations culminating in the alleged accord with certain named individuals "purporting to negotiate for the FDIC" or "holding themselves out as representatives of the FDIC." Plaintiff countered with affidavits of each of the "purported representatives" so named, each deposing that he did not enter such an agreement and that any such agreement would have to be authorized and approved specifically by the FDIC's central office in Washington, D. C.

We find that the evidence before the court presented an issue of fact as to the 'scope of plaintiff's admitted employees' apparent authority. The alleged accord and satisfaction could not be invalidated as a matter of law on this ground.

We are therefore unconvinced that any of the five arguments urged by plaintiff on appeal nullifies defendants' defenses as a matter of law. Similarly, we are unable to discern any other independent legal theories to support the trial court's award of summary judgment to plaintiff. Accordingly, we find that it was error to grant plaintiff's motion therefor.

*Judgment reversed. Banke and Pope, JJ., concur.*

DECIDED FEBRUARY 4, 1981.

*Quinton S. King,* for appellants.
*Carol V. Clark,* for appellee.