**WATERLOO LEASING COMPANY,**
Appellant,

v.

**Connie J. McNATT, Appellee.**

No. 6274.

Court of Civil Appeals of Texas,
Waco.

July 23, 1981.

Jo Anne Christian, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellant.

Mark Perlmutter, Hilgers, Watkins & Kazen, Austin, for appellee.

## OPINION

JAMES, Justice.

This is a suit involving alleged violations of the Federal Truth in Lending Act, 15 U.S.C. Sections 1667–1667e, and alleged violations of the Texas Deceptive Trade Practices Act in regard to the leasing of two automobiles. Waterloo Leasing Company, Defendant-Appellant, leased a Porsche automobile to Connie J. McNatt, Plaintiff-Appellee, on June 21, 1978. Plaintiff-Appellee McNatt terminated that lease and entered a new lease on January 21, 1979, for an Audi Fox. She subsequently brought suit alleging violations of the Federal Truth in Lending Act and the Texas Deceptive Trade Practices Act and seeking penalties, damages, and attorney's fees. Trial was held before a jury on whose findings the court rendered judgment for Plaintiff-Appellee awarding her $12,442.64 in damages and $16,500.00 as attorney's fees, part of such award for attorney's fees being contingent on appeal of the case.

Plaintiff-Appellee is an Intermediate Curriculum Coordinator for the Austin Independent School District and in this position supervises 155 teachers. She has occupied this position since February of 1978 at which time she owned a Honda Accord. Since the Honda Accord had been in an accident and required maintenance, Plaintiff-Appellee desired a more reliable car. She specifically wanted to purchase a Porsche 924 and even put a downpayment on a Porsche, but after talking with some salesmen and the leasing agent of Defendant-Appellant, she decided it would be cheaper to lease.

The lease agreement on the Porsche was for a term of 36 months at the rate of $222.87 per month. The residual value was estimated at $4,500.00, denominated "purchase price" (if option to buy is exercised by Lessee at the expiration of the lease).

Plaintiff-Appellee experienced some difficulties with the Porsche and took it back for repairs some seven times. She paid for some of the repairs, and Defendant-Appellant absorbed others. After about six months Plaintiff-Appellee McNatt indicated that she wanted to terminate the lease and was told that in order to satisfy her obligations under the lease she would have to sell the car retail for $8,500.00 to $9,000.00. She made some effort to sell it at $8,800.00 but eventually returned it asking for a trade.

Defendant-Appellant Waterloo was able to sell the Porsche for a wholesale value of $6,500.00. Waterloo still owed a balance of $8,654.64 to the Bank on the Porsche at the termination of the Porsche lease. Having sold the Porsche for $6,500.00, a deficiency was left on the note of $2,154.64. It should be emphasized that there is no mention in either the Porsche lease or the Audi lease of any note or notes owning by Waterloo to any bank. This $8,654.64 balance was a transaction purely between Waterloo and the bank, to which Mrs. McNatt was not a party in any way. Defendant-Appellant added this $2,154.64 amount to the cost of an Audi Fox which she had decided to lease. Plaintiff-Appellee indicated that she wanted to have her monthly payments remain the same in the new lease.

Waterloo sold the Porsche for $6,500.00, and then bought the Audi for $6,500.00. Then here is how Waterloo prepared the Audi contract which Mrs. McNatt signed:

| | |
|---|---|
| Cost of Audi | $6,500.00 |
| Plus balance which Waterloo owed the bank on their Porsche Note | + 2,154.64 |
| Total | $8,654.64 |
| Times Waterloo's standard profit factor | x 1.39 |
| | $12,029.95 |
| Plus a random sum in order to make Mrs. McNatt's monthly payments to remain at $222.87, the same as in the Porsche lease | 493.37 |
| Total obligation on Audi lease | $12,523.32 |

Before Mrs. McNatt signed the Audi lease, she asked Waterloo's representative what the value was of the Audi, in reply to which question the representative told her it was worth about $7,200.00. He did not tell her Waterloo had paid $6,500.00 for the car.

The total lease price for the Audi, as figured by Waterloo, was $12,523.32. This is based on a monthly payment of $222.87 per month for 36 months. Waterloo normally figures its total lease price by multiplying the price of the car by 1.39, a standard leasing profit factor. Here, Waterloo claims to have reached the sum of $12,-523.32 by multiplying by 1.39 the sum of $8,654.64, same being the remainder of the Porsche obligation ($2,154.64) plus the Audi cost ($6,500.00); and then, in order to realize a profit and to keep monthly payments the same for Mrs. McNatt, added $493.37. The Audi had a "depreciated value" of $4,500.00 at the end of 36 months.

Plaintiff-Appellee Connie J. McNatt filed suit alleging violations of the Federal Truth in Lending Act, 15 U.S.C. Sections 1667–1667e, concerning the two leases. She further alleged that the Audi lease was violative of the Texas Deceptive Trade Practices Act and prayed for actual damages, statutory penalties under the Truth in Lending Act, Texas Consumer Credit Code, attorney's fees and for general relief. Trial was to a jury which found that:

1) the Porsche lease was a consumer lease.

2) the Audi lease was a consumer lease.

3) the depreciated value of the Porsche on the date of termination of the Porsche lease was $6,500.00.

4) the net proceeds from the sale of the Porsche was $6,500.00.

5, 6, 7 a) the Waterloo leasing agent failed to disclose to Connie J. McNatt the total charges from the Porsche lease included in the Audi lease, that such failure was a deceptive trade practice and a producing cause of damages suffered by Connie McNatt.

5, 6, 7 b) The Waterloo leasing agent failed to disclose the price paid by Waterloo for the Audi, that such failure was a deceptive trade practice and a producing cause of damages suffered by Connie McNatt.

5, 6, 7 c) The Waterloo leasing agent represented to Connie McNatt that she could get out of the Porsche lease at any time, that such act was a deceptive trade practice and a producing cause of damages suffered by Connie McNatt.

8) $3,488.32 would reasonably compensate Connie McNatt for the actual damages she has suffered.

11) Waterloo engaged in a unconscionable action or course of action in the course of arranging the Audi lease.

12) such conduct was a producing cause of the damages suffered by Connie McNatt.

13) $1,500.00 would reasonably compensate Connie McNatt for the damages she has suffered.

14 a) $7,500.00 would be reasonable attorney's fees for the services by Plaintiff's attorneys in relation to the amount of work expended for legal services rendered in preparation and trial of this cause in the trial court.

14 b) $3,000.00 would be reasonable attorney's fees for the services by Plaintiff's attorneys if this case is appealed to the Court of Civil Appeals.

14 c) $3,000.00 would be reasonable attorney's fees for the services by Plaintiff's attorneys if application is made for writ of error to the Supreme Court of Texas.

14 d) $3,000.00 would be reasonable attorney's fees for the services by Plaintiff's attorneys if application for writ of error is granted by the Supreme Court.

The jury failed to find in answer to Special Issue No. 9 that the Audi lease provided for a charge of interest.

Based on the above findings the trial court entered judgment for Plaintiff-Appellee Connie J. McNatt awarding her $12,-442.64 in damages and $16,500.00 attorney's fees, providing that the amounts of attorney's fees based on appeal of the case will

be proportionately credited to the extent that such case is not appealed.

Appellant asserts four major contentions in 20 Points of Error.

Appellant Waterloo's first contention (as shown by Points 1 through 4) is that there is no evidence and insufficient evidence that the Porsche and Audi leases were consumer leases. It is Appellant's claim that Plaintiff-Appellee McNatt represented to the Waterloo leasing agent that she was planning to use the cars in connection with her job and that the lease was made by Waterloo on this basis. Waterloo contends, therefore, that the leases were business, not consumer, leases, and consequently are not covered under the provisions of 15 U.S.C., Sections 1667–1667e.

Appellee McNatt claims, however, that she did not enter the leases as business leases, but that she leased the cars so that her monthly payments would be smaller than if she had bought a car. She testified that in addition to her job, she intended to use the car as her only personal car and for recreation.

We feel that the evidence is legally and factually sufficient to support the finding that the leases were consumer leases and thereby overrule Appellant's Points of Error 1 through 4.

In reviewing a "no evidence" point the reviewing court must consider only the evidence which supports the jury verdict and must reject all evidence and inferences which are contrary to the finding. *Elliott v. Great National Life Insurance Co.* (Tex.1981) 611 S.W.2d 620. However, in deciding a factual "insufficiency" point the reviewing court must consider and weigh all the evidence in the case and decide whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate* (Tex.1951) 150 Tex. 662, 244 S.W.2d 660.

"Consumer lease" is defined in 15 U.S.C.A. Section 1667(1) as "a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months and for a total contractual obligation not exceeding $25,000, *primarily for personal, family or household purposes,* whether or not the lessee has the option to purchase or otherwise becomes the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g) of this title. Such term does not include a lease for agricultural, business, or commercial purposes, or to a government or governmental agency or instrumentality, or to an organization." (emphasis supplied). The court's charge to the jury defined "consumer lease" by couching same in the language of the above statute.

The evidence adduced in the trial of this case shows that while the two originals of the Porsche lease signed by Plaintiff-Appellee McNatt stated, "This vehicle to be used for business," Appellee McNatt testified that she did not think that such language was contained in the lease when she signed it. Furthermore, the copy which she had read and kept did not contain such language. Mrs. McNatt further testified that she did not read the Audi lease carefully because of its similarity in appearance to the Porsche lease. The leasing agent for Defendant-Appellant Waterloo testified that he did not inquire as to the exact percentage that Mrs. McNatt planned to use the automobile for business versus personal use, and that someone agreeing to use "this vehicle . . . for business" could be agreeing to use it as little as 10 percent for business. He further admitted that the language in the lease about business purposes did not preclude someone from using the car primarily for personal purposes. The leasing agent further admitted that his practice was not to inquire concerning whether the car was going to be used primarily for business use. He further testified that in connection with the Porsche lease, he never determined whether Mrs. McNatt intended to use the car more for personal use as against the use in connection with her job, and that he relied upon the same information he obtained in con-

nection with the Porsche lease in order to make the Audi lease. The evidence also shows that Plaintiff-Appellee McNatt was able to deduct for income tax purposes only 44.8% of her expenses in connection with the car as business expenses.

Mrs. McNatt had no financial or business interests, and earned no income other than money from her job with the school district and occasional child support. She wanted the Porsche because she liked its shape as a sports car, and wanted it as her personal and only car. She told Waterloo's leasing agent that she intended to use the car for fun, to run errands, and to use in her job. There was never any suggestion that the lease would not be made unless she considered the car to be a business car.

We believe this evidence is sufficient, legally and factually, to support the jury's findings that the Porsche and Audi leases were consumer leases, having been made *primarily* for "personal, family or household purposes."

Appellant's second contention is found in Points 5 through 16, and may be divided into two parts. Appellant first contends that there is no evidence and insufficient evidence that (1) the Waterloo leasing agent failed to disclose the total charges from the Porsche lease contained in the Audi lease; (2) the Waterloo leasing agent failed to disclose the price paid by Waterloo for the Audi; and (3) the Waterloo leasing agent represented that Appellee could get out of the Porsche lease at any time. Second, Appellant contends that there was no evidence and insufficient evidence that the above acts were deceptive trade practices.

■ We are of the opinion and hold that the evidence is both legally and factually sufficient to support the findings of the jury in regard to these actions and accordingly overrule Appellant's Points 5 through 16.

■ The evidence showed that Mrs. McNatt was not told the total amount of the charges to be included in the Audi lease, and that she was not told the total amount

of said lease. She testified to this herself, and the leasing agent for Waterloo admitted not enumerating to Mrs. McNatt the full Porsche lease charges which were included in the Audi lease. Specifically, he did not tell her about the $493.37 profit charge or that Waterloo was making a profit by multiplying $2,154.64 by 1.39. The leasing agent said he did not remember whether he told her the total amount of the Audi lease or not. Mrs. McNatt further testified that the leasing agent told her the value of the Audi was $7,200.00 rather than the $6,500.00 which was actually paid for it. She also testified that the agent told her that she could get out of the Porsche lease at any time.

The jury was asked in Special Issue No. 6 whether each instance of the foregoing conduct was a deceptive trade practice. In connection with this Special Issue the jury was instructed that a deceptive trade practice is "any act, series of acts or practice in trade or commerce which is false, or which has the capacity or tendency to mislead or deceive an ordinary person, even though such person may have been ignorant, unthinking, or credulous." See *Spradling v. Williams* (Tex.1978) 566 S.W.2d 561.

The acts found by the jury certainly had the "capacity or tendency to mislead or deceive an ordinary person." The transactions involved in the making of the Audi lease were confusing at best, and, coupled with the statements made by the Waterloo leasing agent to Mrs. McNatt, were very misleading. Because of them Mrs. McNatt obligated herself to pay more than she would ordinarily have had to pay in leasing the Audi. The evidence shows that in representing to her that she could get out of the Porsche lease at any time, and in making a new lease for an Audi with Mrs. McNatt in which none of the expenses of the Porsche lease were enumerated, the Waterloo leasing agent confused and misled Mrs. McNatt and quite effectively used her ignorance to his benefit. We overrule Appellant's Points 5 through 16.

■ Appellant's third contention (Points 17 and 18) is that there is no evidence and

insufficient evidence that Appellee sustained any actual damages.

Appellee claims that the finding of $3,488.32 damages in Special Issue No. 8 was supported by the findings of the jury in Special Issues Nos. 3 and 4, wherein it was found that both the "depreciated value" and the "net proceeds" were $6,500.00. These jury findings were not challenged at trial and were not raised by points of error on appeal. Appellee contends that they establish Mrs. McNatt's actual obligation under the Porsche lease as zero. Therefore, any charges added to the Audi lease on the basis that they were for money still owed on the Porsche lease, were wrongfully added and constitute damages.

We agree with Appellee and accordingly overrule Appellant's Points 17 and 18.

The Porsche lease contained the following language:

"Lessee further agrees with respect to the leased automobile, that; (a) on termination of the lease, unless the Lessee purchases the vehicle, pursuant to Paragraph 11, the Lessor shall sell the vehicle to a wholesale buyer, and, if the Net Proceeds exceed Depreciated Value, Lessor shall pay the difference to the Lessee; if Net Proceeds are less than Depreciated Value, Lessee shall pay the difference."

In view of this provision it is clear that the measure of Appellee McNatt's obligation on her termination of the Porsche lease was the "Depreciated Value" minus the "Net Proceeds." The jury found in Special Issue No. 3 that the Depreciated Value was $6,500.00 and in Special Issue No. 4 that Net Proceeds were $6,500.00. These findings of fact, since they are not challenged by Appellant on appeal, are binding on the parties and this court, as the reviewing court. *Rancho Camille v. Beachum* (Tex. Civ.App., Waco CA 1980) 596 S.W.2d 632, no writ, and cases cited at page 638; *Crain v. Hill County* (Tex.Civ.App., Waco CA 1981) 613 S.W.2d 367, NRE.

According to the evidence, the leasing agent took the $2,154.64 which he claimed was owed by Mrs. McNatt on the Porsche, multiplied it by 1.39 and in addition thereto

he added $493.37 for a total of $3,488.32. The additional figure of $493.37 was claimed to be an amount which was added over the usual profit figure so that Mrs. McNatt's monthly payments would remain the same as in the Porsche lease. This total amount of $3,488.32 was added to the obligation under the Audi lease. The result was that the total lease obligation under the Audi lease was $12,523.32, which amount was $3,488.32 more than it would have been assuming a zero obligation on the Porsche lease.

While Section 17.50(b)(1) of the Deceptive Trade Practices Act does not define "actual damage," it has been held to mean common law damages or the difference in value between that which the plaintiff parted with and that which he received. *Smith v. Kinslow* (Tex.Civ.App., Dallas CA 1980) 598 S.W.2d 910, 915, no writ; *United Postage Corp. v. Kammeyer* (Tex.Civ.App. Dallas CA 1979) 581 S.W.2d 716, 722, no writ.

Here, the amount Mrs. McNatt was obligated to pay under the Audi lease was $12,523.32 plus tax, title and license. The leasing agent testified that the customary lease charge for an automobile costing $6,500.00 (the actual cost of the Audi) would have been $9,035.00. Therefore, the evidence clearly supports the finding of actual damages in the amount of $3,488.32.

■ Appellant's final contention is that the court erred in awarding attorney's fees because (1) there was no evidence to support a judgment for Mrs. McNatt, and (2) the award is excessive. The first part of this contention is without merit as is discussed in the preceding points.

Plaintiff-Appellee's attorney testified that he spent 125 hours on this case at a standard hourly rate of $60.00 per hour. Time records to support such hourly charges were also admitted. In addition, Plaintiff-Appellee called an expert witness who testified that a reasonable hourly charge would be $60.00 to $75.00 per hour in a case of this nature. He further testified that 105 hours was a reasonable and necessary amount of time to prepare for a jury trial and to go

through voir dire examination, and that he considered a fee of $7,500.00 to be a reasonable fee for the trial considering the circumstances of this case. In addition, this expert witness testified that a reasonable fee for an appeal of a case of this nature to the Court of Civil Appeals would be $3,000.00; a reasonable fee for an application for writ of error would be $3,000.00; and a reasonable fee to try the case in the Supreme Court if such application were granted would be $3,000.00. Appellant Waterloo failed to controvert this evidence in any way.

The jury found that $7,500.00 would be reasonable attorney's fees for the preparation and trial of this cause in the trial court; that $3,000.00 would be reasonable attorney's fees if this case should be appealed to the Court of Civil Appeals; that $3,000.00 would be reasonable attorney's fees if application for writ of error is made to the Supreme Court; and that $3,000.00 would be reasonable attorney's fees if application for writ of error is granted by the Supreme Court.

Section 17.50(d) Texas Business and Commerce Code, VATS, as amended in 1979 reads, "Each consumer who prevails shall be awarded court costs and reasonable and necessary attorney's fees." The only evidence presented in the trial of this case on attorney's fees supports the findings of the jury as to the amounts awarded. The award of attorney's fees was well within the range testified to as reasonable and necessary by the expert witness. See *Union National Life Insurance Co. v. Reese* (Tex.Civ.App., Houston 14th CA 1972) 476 S.W.2d 928, NRE. We therefore find that such amounts were not excessive and overrule Appellant's Points 19 and 20.

Judgment of the trial court is affirmed.

AFFIRMED.