67074. LONDON v. BANK OF THE SOUTH.

CARLEY, Judge.

Appellant-defendant, the lessee, entered into a "Motor Vehicle Lease Agreement" with M. D. Leasing Co., the lessor. This lease

agreement was assigned by the lessor to appellee-plaintiff. Notice of such assignment was given to appellant. Under the terms of the lease agreement, appellant was to lease the 1980 Volkswagen Scirocco specifically described in the agreement for a term of 48 months, and to make 48 monthly rental payments of $233.11. Sometime after the execution of this lease agreement, the automobile sustained extensive damage as a result of a collision. Following the collision, appellant's insurance company issued two checks totaling $6,545, and made payable to appellee as "loan pay off" and "total loss to 1980 VW." Appellee negotiated the checks and subsequently initiated the instant suit, alleging default by appellant on payments due under the lease agreement. Appellant answered, setting forth several affirmative defenses, and counterclaimed, alleging, among other things, that appellee violated certain provisions of the federal Truth in Lending Regulations (Regulation Z) (promulgated pursuant to Title I and Title V of the Consumer Credit Protection Act, 15 USC § 1604). Summary judgment was granted to appellee and appellant appeals.

1. Appellant asserts that the trial court erred in granting appellee summary judgment on its complaint and on the counterclaim, as genuine issues of material fact remained concerning whether appellee failed to make proper disclosures under the Truth in Lending Regulations, former 12 CFR § 226.15 (Regulation Z). Appellee contends that the lease agreement was not a consumer lease, but a business transaction, and, therefore, the trial court correctly found that appellee was exempt from the disclosure requirements of Regulation Z.

The disclosure requirements of former 12 CFR § 226.15 are applicable only to consumer leases. A "consumer lease" is defined as "a contract in the form of a bailment or lease for the use of personal property by a natural person primarily for personal, family or household purposes, for a period of time exceeding four months, for a total contractual obligation not exceeding $25,000, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease. It does not include a lease which meets the definition of a credit sale in § 226.2(i) nor does it include a lease for agricultural, business or commercial purposes or one made to an organization." Former 12 CFR § 226.2 (mm).

In order to determine whether the "Vehicle Motor Lease Agreement" in the instant case was "primarily for personal, family or household purposes," and therefore a consumer lease, the transaction as a whole and the purpose for which it was entered into must be examined. See generally Waterloo Leasing Co. v. McNatt, 620 SW2d 194 (3) (Texas Civil Appeals 1981). The only evidence of record concerning the nature of the transaction is found in the lease agreement itself. That agreement is entitled: "MOTOR LEASE AGREEMENT (BUSINESS USE ONLY)." Immediately preceding appellant's signa-

ture, the agreement states, "You hereby acknowledge receipt of a completed copy of this lease agreement and disclosure statement prior to consummation of the agreement and further state that the Vehicle is to be leased for *BUSINESS USE*." (Emphasis in original.)

Thus, the very terms of the lease agreement state that the purpose of the lease is for business use. There is no evidence of record that the vehicle was leased to appellant for personal, household, or family purposes. The only evidence cited by appellant as "contradicting" the expressly stated business purpose of the lease is the following clause, also found in the lease agreement: "ASSIGNMENT . . . In addition to and cumulative of all warranties implied by law, the undersigned [lessor] hereby covenants and warrants [to assignee] . . . that the within lease agreement is in conformity with and the undersigned has complied in all respects with the Federal Consumer Credit Protection Act . . . ." This quoted clause is clearly a warranty made by the *lessor* to the *appellee* as assignee of the lease and not a warranty made to appellant as the lessee. Furthermore, it merely states that the lease agreement conforms with the Federal Consumer Credit Protection Act, which is necessarily a true statement as that Act expressly *exempts* business leases. Consumer Credit Protection Act, 15 USC § 1667. We find that this last clause in no way creates a question of fact as to whether the transaction was anything other than a lease entered into for business purposes. By the terms of the lease agreement it is clear that the intent of the lessor and appellant was to enter into a business lease. Appellant introduced absolutely no evidence to the contrary. We find no error in the grant of summary judgment to appellee for the reason urged in support of appellant's first enumeration of error. See generally *Carsello v. Touchton*, 231 Ga. 878, 880 (204 SE2d 589) (1974).

2. Appellant further alleges that genuine issues of material fact remained regarding his defense of accord and satisfaction. Accord and satisfaction is an affirmative defense which must be specifically pled. OCGA § 9-11-8 (c). While appellant did plead several affirmative defenses, accord and satisfaction was not one of them. We are not persuaded by appellant's assertion that an accord and satisfaction defense was included in his defensive plea of waiver, as waiver is an entirely separate defense which also must be affirmatively pled. OCGA § 9-11-8 (c). After reviewing the pleadings, we hold that the defense of accord and satisfaction was not raised "in substance." Compare *Slappey Builders v. FDIC*, 157 Ga. App. 343, 347 (2) (277 SE2d 328) (1981). This conclusion is not changed by the fact that appellant's affidavit filed in opposition to the motion for summary judgment, *purports to set forth the defense* of accord and satisfaction. Affirmative defenses cannot be raised for the first time by affidavit filed in opposition to or support of a motion for summary

judgment. *First Nat. Bank v. McClendon*, 147 Ga. App. 722 (250 SE2d 175) (1978); *Slappey Builders v. FDIC*, supra at 347.

3. Appellant also contends that appellee failed to pierce his defenses of failure of consideration, waiver and estoppel. "Appellee, as moving party for summary judgment, had the burden of piercing appellant's affirmative defense[s]." *Peppers v. Siefferman*, 153 Ga. App. 206, 207 (3) (265 SE2d 26) (1980).

As to the defense of failure of consideration, appellant alleged in his answer that, pursuant to the lease agreement, appellee had agreed to provide *a* vehicle after November, the date of the automobile collision, but had failed to do so. However, the terms of the Lease Agreement, which were filed by appellant along with his answer and counterclaim, clearly provide that appellant was only to receive *the* vehicle specified in the contract, which was the 1980 Volkswagen Scirocco. Appellee's affidavit in support of its motion for summary judgment further showed, without contradiction, that appellant made nine payments pursuant to the agreement for the use of that specific vehicle. This evidence showed, prima facie, that consideration in the form of the automobile as provided in the lease had been given for payments made by appellant. This was sufficient to pierce appellant's defense of failure of consideration, and "to shift the burden to the defendant to go forward and show by affidavits or otherwise that there was a genuine issue to be tried. The defendant failed to rebut the evidence presented in any way." *Meade v. Heimanson*, 239 Ga. 177, 179 (236 SE2d 357) (1977).

Appellant raised the defense of estoppel by the vague assertion in his answer that '[appellee] provided and approved insurance to the [appellant] so they [sic] should be estopped from proceeding further against [appellant]." As previously stated, the lease agreement was filed by appellant along with his answer. The terms of the lease agreement concerning insurance show that appellee did in fact require appellant to purchase certain insurance "acceptable" to appellee, along with insurance "through" appellee. While the amount and type of insurance are explicitly delineated in the lease agreement, there is nothing to indicate that appellee, as assignee of the lessor, agreed that the proceeds of any insurance secured as a requirement of the lease would be received in complete satisfaction of appellant's obligation as lessee. Furthermore, appellee has otherwise presented prima facie evidence that it is entitled to recover on the lease agreement. "This pierced the defense, sufficient to shift the burden to [appellant] to go forward and show by affidavits or otherwise that there was a genuine issue to be tried. [Appellant] failed to rebut the evidence presented in any way." *Meade v. Heimanson*, supra at 179. See also *Buddy's Appliance Center v. Amana Refrigeration*, 151 Ga. App. 268 (2) (259 SE2d 673) (1979).

Moreover, we are unaware of any principle of law that would serve to estop appellee from proceeding against appellant because appellee provided and approved insurance as a provision of the agreement. This unsupported conclusion is the sole basis for appellant's defense of estoppel. "The purpose of the Summary Judgment Act, as we have interpreted it, would be defeated if a party opposing a motion for summary judgment was permitted to defeat the motion by suggesting so vague a defense as to prevent the movant or the court from ascertaining the theory behind the defense. One opposing the motion must present the essence of his case or else suffer judgment against him. As stated in the Act itself, a response 'must set forth specific facts showing that there is a genuine issue for trial.' " *Meade v. Heimanson*, supra at 180. Accordingly, the defense of estoppel did not preclude the grant of summary judgment to appellee.

Appellant finally asserts that his affirmative defense of waiver was not pierced. In his answer, appellant alleged that, by accepting the insurance drafts, appellee "did waive all further rights under the lease agreement." See OCGA § 1-3-7. While a person may waive or renounce what the law has established in his favor, such a waiver must be shown to be clearly intended and expressed by the person so waiving. See generally *Garcia v. Garcia*, 232 Ga. 869 (209 SE2d 201) (1974).

We find that the waiver defense was pierced by appellee's affidavit which states that it credited appellant's account with the total amount of the insurance drafts, and that a sum certain is still due and owing. The burden then shifted to appellant to set forth facts showing that there was a genuine issue for trial. Appellant having failed to do so, no questions of fact remained, and the trial court properly granted appellee's motion for summary judgment. See *Peppers v. Siefferman*, supra.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 29, 1984.

*Joseph I. Weinberg*, for appellant.
*Mark L. Golder*, for appellee.