## A06A1695. CLAY et al. v. OXENDINE et al.
### (645 SE2d 553)

BERNES, Judge.

The appellants in this case include numerous individuals and corporations who operate consumer cash advance and finance businesses in the State of Georgia.[1] Appellees John Oxendine, the Industrial Loan Commissioner for the State of Georgia, and Thurbert E. Baker, the Attorney General for the State of Georgia (collectively, the "state"), commenced this civil action alleging that appellants' use of a consumer "sale/leaseback" transaction violates the anti-payday lending statute, OCGA § 16-17-1 et seq., and the Georgia Industrial Loan Act, OCGA § 7-3-1 et seq. ("GILA"). The state thereafter moved for partial summary judgment as to appellants' liability and moved to strike appellants' jury demand. The trial court granted the motions. On appeal, appellants contend that the trial court erred (1) by ruling that their "sale/leaseback" transactions constituted illegal payday loans as a matter of law; (2) by denying their right to a jury trial; and (3) by holding the appellant corporate officers individually liable. For the reasons that follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the non-movant. Id.

So viewed, the evidence shows that appellants operate numerous consumer cash advance and finance businesses serving citizens throughout the State of Georgia. In 2002, the state investigated appellants' businesses in response to consumer complaints that appellants charged excessive interest and engaged in abusive collection tactics. Appellants argued that their practice of making cash advances did not amount to loans. Following that investigation and an administrative hearing, the Industrial Loan Commissioner issued a finding that appellants were engaging in illegal payday lending and ordered them to cease and desist in those business practices. See *USA Payday Cash Advance Centers v. Oxendine*, 262 Ga. App. 632, 632-633

---

[1] Appellants include Richard D. Clay II; Angela Clay; Brent West; John Spence; American Cash Advance, Inc.; EZ Credit, Inc.; Fast Cash 'Til Payday, Inc.; Great American Cash Advance, Inc.; Great American Credit, Inc.; Integrated Financial Concepts, Inc.; Money 'Til Payday, Inc.; USA Payday Advance, Inc.; USA Payday Cash Advance Ctrs. Nos. 8 through 14, Inc.; DEUSA Advances, Inc.; GRUSA Centers, Inc.; HLUSA Advances, Inc.; LAUSA Paydays, Inc.; LNUSA Payday Center, Inc.; MHUSA Advances, Inc.; RDUSA Advances, Inc.; UCUSA Payday, Inc.; WDUSA Centers, Inc.; and WKUSA Payday, Inc.

(585 SE2d 924) (2003).

In November 2002, appellants changed their business practices to engage in a "rent a bank" arrangement, whereby they served as the agent of an out-of-state bank that made payday loans. The Commissioner's investigation of this payday loan arrangement was addressed in *BankWest v. Oxendine*, 266 Ga. App. 771 (598 SE2d 343) (2004). Thereafter, the provisions of OCGA §§ 16-17-1 (c), 16-17-2 (b) (4), and 16-17-2 (d) were enacted, effective May 1, 2004, to statutorily declare "rent a bank" arrangements to be violations of GILA and the Georgia usury statutes for which civil and criminal liability would be imposed.

Appellants then began to engage in the "sale/leaseback" transactions at issue here, whereby their consumer customers purportedly sold personal property items to appellants, then immediately leased the items back from appellants. Following an investigation, the state concluded that the "sale/leaseback" transactions were nothing more than disguised, illegal payday loans. Consequently, the state commenced the instant action.

1. In granting partial summary judgment to the state on the issue of liability, the trial court concluded that appellants' "sale/leaseback" transactions were payday loans in violation of the anti-payday lending statute (OCGA § 16-17-1 et seq.), GILA (OCGA § 7-3-1 et seq.), and the Commissioner's previously issued cease and desist order. On appeal, appellants argue that the trial court failed to apply proper summary judgment standards requiring that the evidence be construed in their favor as the nonmovants, and that the trial court's ruling was precluded by evidence that their customers had no obligation to repay the debt. We discern no error.

> A payday loan is a loan of short duration, typically two weeks, at an astronomical annual interest rate. Payday loans are the current version of salary buying or wage buying. The fees, charges, and interest on a payday loan are between 15 percent and 30 percent of the principal for a two-week loan, constituting a pretext for usury.

(Citations and punctuation omitted.) *USA Payday Cash Advance Centers*, 262 Ga. App. at 633-634. "Because the maturity date of these loans is usually set to coincide with the borrower's next payday, the loans are often called 'payday loans.' " *BankWest*, 266 Ga. App. at 771.

The Georgia General Assembly enacted OCGA § 16-17-1 et seq. to declare payday loans illegal and to impose "substantial criminal and civil penalties over and above those currently existing under

state law . . . in order to prohibit this activity in the State of Georgia and to cause the cessation of this activity once and for all." OCGA § 16-17-1 (c). Payday lending under this statutory scheme "encompasses all transactions in which funds are advanced to be repaid at a later date, notwithstanding the fact that the transaction contains one or more other elements." OCGA § 16-17-1 (a). A payday loan is illegal "notwithstanding the fact that the transaction also involves . . . [t]he selling or providing of an item, service, or commodity incidental to the advance of funds." OCGA § 16-17-2 (b) (2).

To determine whether there has been a violation of OCGA § 16-17-2,

> the trial court shall be authorized to review the terms of the transaction in their entirety . . . [and] shall not be bound in making such determination by the parol evidence rule or by any written contract but shall be authorized to determine exactly whether the loan transaction includes the use of a scheme, device, or contrivance and whether in reality the loan is in violation of the provisions of subsection (a) of Code Section 16-17-2 based upon the facts and evidence relating to that transaction and similar transactions being made in the State of Georgia.

OCGA § 16-17-6.

Payday loans under $3,000 are further regulated by GILA, OCGA § 7-3-1 et seq.

> Since [GILA] was enacted to define and prevent usury and to provide a source of regulated funds for those who had been borrowing at usurious rates from loan sharks, street shylocks and wage-buyers, then [payday loans] come within the jurisdiction of the Act. . . . If the maximum interest rate is over the limit set by OCGA § 7-3-14 of ten percent[2] or the lender fails to hold an industrial license issued by the Commissioner, then "payday loans" violate [GILA]. See 2002 Op. Atty. Gen. No. 2002-3.

---

[2] See also OCGA § 7-4-18 (a) (prohibiting charge of interest in excess of five percent per month (60% APR) as criminal usury).

*USA Payday Cash Advance Centers*, 262 Ga. App. at 634.[3] The Industrial Loan Commissioner is vested with authority to investigate, conduct hearings, and issue a cease and desist order if he has cause to believe that any person is in violation of GILA. OCGA § 7-3-23. A violation of the cease and desist order constitutes a public nuisance for which the Commissioner is entitled to an injunction to be granted by the superior courts. OCGA § 7-3-23.

With this statutory framework in mind, we turn to the contentions in the present case. Appellants contend that their "sale/leaseback" transactions cannot be construed as loans coming within the provisions of OCGA § 16-17-1 et seq. and GILA because a loan entails the advancement of funds that must be repaid at a later date. See OCGA §§ 7-3-3 (4);[4] 16-17-1 (a).[5] Appellants emphasize that the transactions at issue were reflected by a written bill of sale identifying the property sold and the sales price and by a lease agreement disclosing the lease terms, the initial lease payment due, and three options that can be exercised at the end of the lease term. The leases purportedly allowed the customer to either (1) renew the lease for another lease period; (2) repurchase the property for the sales price, without credit for any rental payments made; or (3) return the property and owe nothing more. Appellants contend that the third option to return the property without rendering payment under the lease agreement precludes the transaction from being considered a loan, since there is no obligation to repay the money received by the consumer for the sale of his or her items.

Notwithstanding appellants' suggestion, however, the terms of their written lease with customers are not talismanic in this context.

> [W]hether a given transaction is a purchase . . . or a loan of money . . . depends, not upon the form of words used in contracting, but upon the real intent and understanding of the parties. No disguise of language can avail for covering up usury, or glossing over an usurious contract. The theory that a contract will be usurious or not, according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether

---

[3] GILA applies to all persons making loans of $3,000 or less unless they are specifically exempted. OCGA §§ 7-3-4 and 7-3-6. Appellants do not claim that they are exempt from the GILA provisions, and they do not have a license to issue loans.

[4] OCGA § 7-3-3 (4) defines a loan as "any advance of money in an amount of $3,000.00 or less under a contract requiring repayment and any and all renewals or refinancing thereof."

[5] OCGA § 16-17-1 (a) applies to "all transactions in which funds are advanced to be repaid at a later date."

erroneous. The law intends that a search for usury shall penetrate to the substance.

*Pope v. Marshall*, 78 Ga. 635, 640 (2) (4 SE 116) (1887). See also *BankWest*, 266 Ga. App. at 776 (1).[6] As such, we do not consider appellants' claims in a vacuum, but rather must look at the totality of the circumstances in analyzing whether appellants' "sale/leaseback" arrangement was a sham transaction to disguise an illegal payday loan scheme.

Regardless of the written provisions of the sale/leaseback contracts, the state presented evidence establishing that appellants' sale/leaseback arrangements contained the same salient features of a payday loan transaction that violates OCGA § 16-17-1 et seq. and GILA. An audit supervisor from the Commissioner's Office explained the practice and economic structure of payday lending, and three of appellants' customers provided affidavits describing the transactions that they engaged in with the appellants' businesses.

Consistent with the practice of payday lending, the customers were required to apply for an advancement of funds by providing the name of their employers and length of employment, their salary and paydates, checking account information, a recent pay stub, and bank statements. The customers also provided a check or electronic debit authorization in the amount of the principal amount advanced to them plus interest.

Following the advancement of funds, the customers' first payment was due within two weeks. The customers could be released from the agreement by paying the principal amount advanced to them plus a 25% to 27% fee, amounting to an APR of 650% to 702%. If the customers were unable to do so, then they were required to renew the transaction term for another two-week period by paying another 25% to 27% fee. None of these payments was applied to the

---

[6] Payday lenders have often been accused of using sham transactions in efforts to disguise the fact that they engage in illegal payday loan transactions and in efforts to evade usury laws. See *Watson v. State*, 235 Ga. App. 381 (509 SE2d 87) (1998) (sham storage fees). See also *Upshaw v. Ga. Catalog Sales*, 206 FRD 694 (M.D. Ga. 2002) (sham catalog gift certificates); *Henry v. Cash Today*, 199 FRD 566 (S.D. Tex. 2000) (sham advertising sales); *Cashback Catalog Sales v. Price*, 102 FSupp.2d 1375 (S.D. Ga. 2000) (sham gift certificates and catalog coupons). Also see *Alabama Catalog Sales v. Harris*, 794 S2d 312, 317, n. 4 (Ala. 2000) (sham catalog gift certificates); *Short On Cash.Net of New Castle v. Dept. of Financial Institutions*, 811 NE2d 819 (Ind. Ct. App. 2004) (sham internet service contracts); *Greenberg v. Com. ex rel. Atty. Gen. of Va.*, 255 Va. 594 (499 SE2d 266) (1998) (sham checks at a discount). Likewise, payday lenders have used lease-purchase transactions in efforts to disguise usurious loans. See *Pope*, 78 Ga. 635. See also *Moran v. Kenai Towing & Salvage*, 523 P2d 1237, 1242-1243 (Alaska 1974); *SAL Leasing v. State ex rel. Napolitano*, 10 P3d 1221 (Ariz. Ct. App. 2000); *Reitze v. Humphreys*, 125 P 518 (Colo. 1912); *Browner v. Dist. of Columbia*, 549 A2d 1107 (D.C. 1988); *Kuykendall v. Malernee*, 516 P2d 558 (Okla. Ct. App. 1973).

principal amount owed. If the customers failed to make a required payment, their checks were cashed or an electronic debit from their bank account was made immediately thereafter.

At the same time, the state presented evidence that the component of the transaction involving the sale and lease of personal property was nothing more than a sham. In this respect, the state pointed to appellants' records which reflect that the same cell phone and power pack were "sold" and listed on the "sale/leaseback" documents submitted by numerous different customers during the same time period, and these same items were assigned different values to correspond with the "sale" or loan amount. Other "sale/leaseback" documents of record also show that the value assigned to the personal property leased back to the customer was not based on an actual appraised market value, but rather was made to directly correspond to the loan amount approved for the customer. For example, in one of its transactions, appellants assigned an astronomical value of $450 to a can opener and coffee maker to correspond with the amount the customer was loaned. Finally, several of appellants' customers explained that the bill of sale stated something other than the transaction that they actually agreed to, and that they only signed the "sale/leaseback" documents because they needed the money.

Based on this combined evidence, the state met its burden of proving that appellants were engaged in illegal payday lending. After the state discharged its burden by referencing affidavits, depositions, and other documents in the record establishing that appellants were so engaged, appellants could not rest on their pleadings, but rather were required to point to specific evidence giving rise to a triable issue. *Smith v. Lewis*, 259 Ga. App. 548 (578 SE2d 220) (2003). This, the appellants failed to do.

First, appellants came forward with no evidence to refute that the "sale/leaseback" arrangements contained the same salient features as an illegal payday loan. Although appellants pointed to the deposition testimony of one of the customers to allege that he had memory problems, the customer's recollection of the nature of his transaction with appellants was clear and consistent.

Second, appellants failed to offer any evidence refuting the state's evidence showing that the sale and lease of personal property was a sham component of the transactions. In this respect, there is no evidence in the record indicating that appellants ever inspected any of the personal property to determine its condition at the time the lease was made or sought to acquire possession of the property listed by the customers after a default. Moreover, appellants failed to offer any specific evidence to explain the discrepancy in the records reflecting that the same two items were purportedly "sold" and "leased" by numerous different customers during the same time

period and that these items were assigned different values to correspond with the "sale" amount to be paid under the "lease." While appellants speculated that there may have been an entry error by its employees or a computer glitch to explain this information in their corporate documents, "mere speculation, conjecture, or possibility [are] insufficient to preclude summary judgment." *Rosales v. Davis*, 260 Ga. App. 709, 712 (2) (580 SE2d 662) (2003). See also *Medders v. Kroger Co.*, 257 Ga. App. 876, 878 (572 SE2d 386) (2002).

In light of this evidentiary record, we conclude that the trial court did not err in granting the state's motion for partial summary judgment. The evidence set forth above conclusively demonstrates that appellants' "sale/leaseback" transactions constituted payday loans in violation of OCGA § 16-17-1 et seq. and GILA. See OCGA §§ 7-3-3 (4), 7-3-4, 16-17-2 (b) (2); *Jackson v. Commercial Credit Corp.*, 90 Ga. App. 352, 355-356 (3) (83 SE2d 76) (1954). For the same reasons, the trial court was entitled to conclude that the appellants' "sale/leaseback" transactions violated the Commissioner's prior cease and desist order. It follows that summary adjudication was proper.

Appellants' claim that the trial court failed to rule upon their affirmative defenses in granting summary judgment is unavailing. It is true that "[a]ppellee[s], as moving party for summary judgment, had the burden of piercing appellant[s'] affirmative defenses. *Peppers v. Siefferman*, 153 Ga. App. 206, 207 (3) (265 SE2d 26) (1980)." (Punctuation omitted.) *London v. Bank of the South*, 170 Ga. App. 44, 47 (3) (315 SE2d 924) (1984). Nonetheless, the evidence presented in this case did indeed pierce appellants' affirmative defenses as to liability and discharged appellees' burden for partial summary judgment. "The burden then shifted to appellant[s] to set forth facts showing that there was a genuine issue for trial. Appellant having failed to do so, no questions of fact remained, and the trial court properly granted appellee's motion for [partial] summary judgment." *London*, 170 Ga. App. at 47-48 (3). Where "[t]he evidence of record pierced appellant[s'] defensive pleadings and appellant[s] failed to demonstrate that any issue of fact remains with regard to those defenses[,] [i]t was not error to grant appellee[s] summary judgment for any reasons urged on appeal." *Stroup v. Robbie Jon Dev. Corp.*, 159 Ga. App. 652, 653 (284 SE2d 667) (1981).

Although appellants contend that the trial court failed to rule upon their defense challenging the constitutionality of the anti-payday lending statutes,[7] the record establishes that appellants

---

[7] We express no ruling upon appellants' defense challenging the constitutionality of the penalties aspect of this case. The state's motion for partial summary judgment only applies to the issue of liability.

failed to properly raise a constitutional attack. See *Chester v. State*, 262 Ga. 85, 88 (3) (414 SE2d 477) (1992). Moreover, appellants alleged as unconstitutional statutes that were not at issue in this case or were otherwise nonexistent.

2. Appellants further contend that the trial court erred in denying them a jury trial. In light of our holding in Division 1 that partial summary judgment was properly entered as to civil liability for violations of OCGA § 16-17-1 et seq. and GILA, we conclude that this claim of error is moot.[8]

3. Lastly, appellants claim that the trial court erred by holding the appellant corporate officers individually liable for the corporate transactions.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." (Citation and punctuation omitted.) *Amason v. Whitehead*, 186 Ga. App. 320, 321-322 (367 SE2d 107) (1988).

> A corporation possesses a legal existence separate and apart from that of its officers and shareholders so that the operation of a corporate business does not render officers and shareholders personally liable for corporate acts. A corporate officer who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein (or if he disregarded the corporate form so as to authorize piercing of the corporate veil).

(Citation and punctuation omitted.) *Lawton v. Temple-Warren Ford, Inc.*, 203 Ga. App. 222, 223 (b) (416 SE2d 527) (1992). See also *Kilsheimer v. State*, 250 Ga. 549 (299 SE2d 733) (1983). "An officer of a corporation cannot assert that criminal acts, in the form of corporate acts, were not his acts merely because carried out by him through

---

[8] To the extent that appellants have also sought a jury trial as to the issue of liability for expenses of litigation pursuant to OCGA § 13-6-11, this issue was not addressed by the state's motion for partial summary judgment and was not ruled upon in the trial court's order. Rather, partial summary judgment has only been granted as to the issue of liability for violations of OCGA § 16-17-1 et seq. and GILA. In light of the fact that the trial court has not ruled upon this issue, it is not ripe for our appellate review. *McKesson HBOC v. Adler*, 254 Ga. App. 500, 504 (1) (562 SE2d 809) (2002).

the instrumentality of the corporation which he controlled and dominated in all respects and which he employed for that purpose." *Parish v. State*, 178 Ga. App. 177, 178 (1) (342 SE2d 360) (1986).

The evidence conclusively established that appellants took part in, specifically directed, participated or cooperated in the payday lending activities upon which their individual liability could be imposed.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 27, 2007 —
RECONSIDERATION DENIED APRIL 13, 2007 —

*David G. Crockett*, for appellants.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Amy Meyer Burns, Assistant Attorney General*, for appellees.