**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 23, 2021**

# In the Court of Appeals of Georgia

A20A1857. WOODSTONE TOWNHOUSES, LLC v. SOUTHERN
      FIBER WORX, LLC et al.

A20A1884.  SOUTHERN  FIBER  WORX,  LLC.  et  al.  v.
      WOODSTONE TOWNHOUSES, LLC.

PHIPPS, Senior Appellate Judge.

These cases involve a trespass action filed by Woodstone Townhouses, LLC

("Woodstone"), which owns and operates an apartment complex known as

Woodstone Townhouses, against Southern Fiber Worx, LLC, a telecommunications

provider, and its owner, Gregory B. Turton. All parties moved for summary judgment,

and the trial court granted in part and denied in part the motions. In Case No.

A20A1857, Woodstone appeals the grant of partial summary judgment to Southern

Fiber and Turton and the denial of both its motion for summary judgment and its

motion to compel the production of financial records. In Case No. A20A1884,

Southern Fiber and Turton appeal the trial court's denial of their motion for summary judgment.

For the reasons that follow, in Case No. A20A1857, we find that there are genuine issues of material fact as to whether Southern Fiber and Turton were innocent trespassers or willfully trespassed on Woodstone's property and, accordingly, we affirm the trial court's denial of summary judgment to Woodstone on the trespass claim. However, we reverse the trial court's grant of summary judgment to Southern Fiber and Turton on Woodstone's claim for punitive damages, and, relatedly, we reverse the trial court's denial of Woodstone's motion to compel and remand for the trial court to revisit its ruling and determine whether Woodstone's motion to compel has merit given the ruling of this Court.

We also reverse the trial court's denial of Woodstone's motion for summary judgment on Southern Fiber's and Turton's defenses and counterclaims for fraud and promissory estoppel. We further find that the trial court erred in denying Woodstone's motion for summary judgment as to Southern Fiber's and Turton's defenses of failure to state a claim upon which relief may be granted, ratification, and laches, and Turton's defense of corporate shield.

2

We also affirm the trial court's denial of Woodstone's motion for summary judgment on Southern Fiber's and Turton's counterclaims for OCGA § 9-15-14 attorney fees for defending against Woodstone's suit, but we reverse the trial court's denial of summary judgment with respect to OCGA § 13-6-11 attorney fees and OCGA § 9-15-14 attorney fees for pursuing their counterclaims. Finally, we reverse the trial court's denial of summary judgment to Woodstone on Southern Fiber's and Turton's counterclaims for punitive damages.

In Case No. A20A1884, we affirm the trial court's denial of Southern Fiber and Turton's motion for summary judgment on Woodstone's claim for trespass.

The standards applied when determining a motion for summary judgment are well established:

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion, and the court cannot resolve the facts or reconcile the issues. When we review the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

*Lee v. Southern Telecom Co.*, 303 Ga. App. 642, 642 (694 SE2d 125) (2010) (citations omitted).

3

So viewed, the record shows that Mark Crenshaw owns Woodstone and Woodstone Townhouses, which consists of 84 apartments. Tenants of the apartment complex purportedly contacted Southern Fiber about using its fiber internet services. In August 2017, Turton and employees of GBT, LLC, a company from which Southern Fiber leases employees to conduct its installation work, entered Woodstone's premises and remained there installing a conduit, which would later contain fiber optic cable, for approximately four hours.

Prior to beginning work, Southern Fiber purportedly called Georgia Locate 8-1-1, a company that notifies utility companies to mark their underground utility lines on a property. Thereafter, Turton observed painted lines grouped together in a 15-foot strip running away from the public road and believed there was a utility easement in that area. It is undisputed that Turton did not contact Crenshaw or anyone at Woodstone "regarding installing cable so that . . . Southern Fiber could provide internet services to tenants of Woodstone[.]" In fact, prior to laying the cable, Turton spoke to Crenshaw's wife, who informed him that Crenshaw likely would not be interested in installing fiber internet on the property, and Turton attempted to contact Crenshaw a few times, but never spoke with Crenshaw about installing cable or digging on Woodstone's property. In fact, Turton admitted he did not have

4

permission to go on the property. Although Southern Fiber later acknowledged in a letter that it understood there was no utility easement where Southern Fiber was working, there do appear to be questions of material fact regarding whether a blanket utility easement existed on the property and whether Southern Fiber had the right to utilize that easement.

On October 19, 2017, Turton and employees of GBT returned to Woodstone's property a second time to install meter boxes and holes to allow access to the conduit. During their work with a mini excavator, they broke a water line and water had to be turned off to the apartment complex. Turton informed someone at Woodstone that Southern Fiber had broken the water line while working on a utility easement, called to have the water to the apartment shut off, fixed the broken line, and then resumed working. When Crenshaw returned Turton's call, Turton explained that Southern Fiber had hit a water line while digging on the utility easement, to which Crenshaw responded that there was no utility easement on the property. Later that afternoon, Crenshaw met Turton where the water line was broken. Crenshaw informed Turton that Southern Fiber was not working on a utility easement, that Southern Fiber should have spoken with him before going on his property, and that Southern Fiber had no business being on his property. Turton believed that Crenshaw was merely concerned

5

with being compensated in relation to any new internet service to the property because Crenshaw mentioned that only Southern Fiber would profit from laying cable, so Turton told Crenshaw he would provide him some options.

The next day, on October 20, 2017, Turton delivered to Crenshaw a letter setting forth four options. In the letter, Turton stated that he believed he was working on a utility easement, but understood from Crenshaw that there was no easement. Turton also acknowledged that he should have spoken with Crenshaw prior to performing any work. The letter set forth the following options "that could work for giving us permission to build service to these apartments":

Option 1: Let us service Crenshaw Jewelers with a 100 megs X 100 megs internet service for free for 2 years. That is a service that is normally $299 per month.

Option 2: Pay you a $1,000 one-time fee for the utility easement.

If one of the options above are not suitable, please let me know which of options 3 or 4 you would like for me to do.

Option 3: Leave the conduit and meter boxes in place and not provide service on your property. (This would give you a conduit you could use in the future if you ever need to.)

Option 4: Have us remove the conduit and meter boxes and return the property as it was before I drilled in the conduit.

6

The letter did not include any mention of a trespass claim or a settlement of any claim. After reading the letter, Crenshaw told Turton he would give him an answer the following Monday. Crenshaw, however, specifically informed Turton that it was going to take more than $1,000 for Southern Fiber to provide services to Woodstone's tenants, stating something like, "I can tell you a thousand dollars ain't going to do it."

Turton contends that Crenshaw called him the following Monday and instructed him to "just leave the conduit[,]" which Turton believed was an acceptance of option 3 "to settle any kind of dispute on the trespassing[.]" However, Turton admits that Crenshaw never actually stated he was choosing option 3 or settling any trespass claim; Crenshaw simply used the same language Turton had used in option 3 of the letter. According to Crenshaw, he informed Turton on Monday that "this ain't gonna work" because he did not consider any of the options acceptable, and instructed Turton "not to remove [the conduit] until we get this thing settled." In the same conversation, Crenshaw told Turton that Southern Fiber would have to pay him $10,000 to service the Woodstone tenants. Turton testified that in his mind Crenshaw's statements covered different subjects: Crenshaw's statement to leave the conduit was Crenshaw selecting option 3 of the letter to resolve the trespass issue, and Crenshaw's statement demanding $10,000 was his price for Southern Fiber to

7

service Woodstone's tenants. Southern Fiber did not return to Woodstone Townhouses to complete the installation because Turton "wasn't going to pay [Crenshaw] $10,000[.]"

On October 25, 2017, Southern Fiber received a call about another water leak at Woodstone Townhouses, purportedly caused by GBT employees who were working nearby. Although GBT employees stated that they did not cause the leak, the leak was not where Southern Fiber previously had broken the water line, and Turton knew immediately upon his arrival at Woodstone Townhouses that the employees did not cause this water leak, he nevertheless directed the employees to dig up the water pipe and fix it. Turton believed that repairing the water leak "would take care of any kind of trespass claim[,]" but he admitted that he and Crenshaw never actually spoke about any waiver of claims as a result of fixing the water leak.

In December 2017, Woodstone sent a letter to Southern Fiber and Turton threatening a lawsuit and demanding approximately $90,000 in exchange for an easement and the right to provide internet access to Woodstone tenants. Woodstone ultimately filed an action against Southern Fiber and Turton in May 2018, asserting claims for trespass, expenses of litigation, and punitive damages. Southern Fiber and Turton answered and counterclaimed for quantum meruit, promissory estoppel,

8

slander, libel, fraud, attorney fees, and punitive damages. Turton also included a counterclaim for intentional infliction of emotional distress. In addition, Southern Fiber raised 14 defenses, and Turton raised 15 defenses.

Woodstone subsequently filed a motion to compel discovery against Southern Fiber and Turton, and fees associated with bringing the motion, seeking income tax returns, financial statements, ad valorem tax bills, warranty and security deeds, broker account statements, and compensation paid by Southern Fiber to Turton. The trial court denied Woodstone's motion to compel, finding that discovery of a party's financial condition is not permitted unless there are facts giving rise to punitive damages liability, and Woodstone failed to meet its burden of demonstrating such facts in this trespass case. Woodstone also filed a motion for partial summary judgment on Southern Fiber's and Turton's counterclaims and on their "First Defenses" (failure to state a claim), "Third Defenses" (fraud), "Fifth Defenses" (settlement), "Sixth Defenses" (release), "Seventh Defenses" (estoppel), "Eighth Defenses" (ratification of trespass), "Ninth Defenses" (laches), and Turton's "Fifteenth Defense" (corporate shield). Following a hearing, the trial court granted Woodstone summary judgment on Southern Fiber's and Turton's counterclaims for quantum meruit, slander, and libel, as well as Turton's counterclaim for intentional

9

infliction of emotional distress.[1] The trial court denied Woodstone's motion for summary judgment as to all other claims, specifically finding that the record possessed conflicting evidence creating genuine issues of material fact precluding summary judgment regarding the counterclaims for promissory estoppel and fraud.[2]

After the trial court entered its order on Woodstone's motion for partial summary judgment, the trial court held a hearing on Woodstone's previously filed motion for summary judgment on liability, as well as Southern Fiber and Turton's joint motion for summary judgment on Woodstone's claims and a few of their counterclaims.[3] The trial court denied Woodstone's motion for summary judgment as to liability, finding that a jury must decide whether the innocent trespasser doctrine applies. In the same order, the trial granted Southern Fiber and Turton's motion for summary judgment regarding the trespass claim to the extent that it involved property

---

[1] Southern Fiber and Turton have not asserted in these appeals any error with respect to the trial court's grant of summary judgment on these counterclaims.

[2] Woodstone applied for interlocutory review from the order, but this Court denied the application. See Case No. A20I0112 (November 22, 2019).

[3] In this motion, Southern Fiber and Turton sought summary judgment on their counterclaims for promissory estoppel, slander, and libel, but the trial court did not address these claims in this order because it previously had issued a ruling on these counterclaims.

10

not owned by Woodstone,[4] and it granted summary judgment to Southern Fiber and Turton on Woodstone's claim for punitive damages.

*Case No. A20A1857*

In this appeal, Woodstone raises 11 enumerations of error regarding the trial court orders entered in the case.[5]

1. Woodstone asserts that the trial court erred in denying its motion for summary judgment on the issue of liability. Specifically, it argues that the trespass issue should be resolved as a matter of law in its favor because Southern Fiber and Turton (1) were not authorized to use the City of Cordele's rights-of-way and (2) violated numerous municipal ordinances when they failed to consult city representatives prior to commencing excavation. According to Woodstone, these facts amount to negligence *per se* and, therefore, preclude Southern Fiber's and Turton's claims that they were innocent trespassers. Woodstone's arguments lack merit.

---

[4] Woodstone has not asserted in these appeals any error with respect to the trial court's grant of summary judgment on this portion of the trespass claim.

[5] "For convenience of discussion, we have taken the enumerated errors out of the order in which" Woodstone has listed them and combined enumerations when possible. *Foster v. Morrison*, 177 Ga. App. 250, 250 (1) (339 SE2d 307) (1985).

11

"An owner of real property has the right to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from its use." *LN West Paces Ferry Assoc., LLC. v. McDonald*, 306 Ga. App. 641, 643 (1) (a) (703 SE2d 85) (2010) (citation and punctuation omitted). Under Georgia law, "a trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another." *Frank Mayes & Assoc., Inc. v. Massood*, 238 Ga. App. 416, 418 (1) (518 SE2d 903) (1999) (citation and punctuation omitted). See OCGA § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."). Georgia, however, also recognizes the "innocent trespasser" doctrine.

> The innocent trespasser doctrine protects individuals who enter the land of another under the mistaken belief that it is permissible to do so, and provides under those circumstances that the unintentional and nonnegligent entry does not automatically subject an individual to liability even though the entry causes harm to the possessor.

*LN West Paces Ferry Assoc.*, 306 Ga. App. at 644 (1) (a) (citation and punctuation omitted); accord *Bullard v. Bouler*, 272 Ga. App. 397, 399 (2) (612 SE2d 513) (2005).

12

This Court has defined "[a] wilful trespasser . . . as one who knows that he is wrong, while an innocent trespasser is one who believes that he is right." *Young v. Faulkner*, 228 Ga. App. 587, 588 (492 SE2d 331) (1997). It is well settled that the question as to whether the trespass was willful or whether the defendant meets the burden of proving he is an innocent trespasser is generally for the jury to determine, except in those cases where the trespasser acts with such an entire want of care and reckless indifference as would clearly amount to a disregard of the rights of the other party. See, e.g., *LN West Paces Ferry Assoc.*, 306 Ga. App. at 644 (1) (a); *Lee*, 303 Ga. App. at 644 (1); *Norton v. Holcomb*, 285 Ga. App. 78, 84-85 (3) (646 SE2d 94) (2007); *Young*, 228 Ga. App. at 588.

Here, Southern Fiber and Turton assert that they were innocent trespassers because they complied with industry standards before beginning work laying the cable, relied on the tenants to ensure compliance with their leases, called 8-1-1 to have underground utilities marked, and determined the likely existence of a utility easement based on the painted markings on Woodstone's property.[6] Woodstone, on the other hand, asserts that Southern Fiber and Turton were told Crenshaw likely did

---

[6] Southern Fiber and Turton's arguments will be more fully addressed in Case No. A20A1884.

13

not want cable installed and failed to obtain permission before entering Woodstone's

property, took no steps to ensure that an easement existed, and were not permitted to

utilize any right-of-way that may exist on the premises based on Southern Fiber's

failure to pay a franchise fee or comply with local ordinances.

In ruling on Woodstone's motion for summary judgment, the trial court

specifically found that, based on the facts presented, a jury should determine whether

the innocent trespasser doctrine applies. We agree with the trial court. Questions of

material fact as to whether the trespass in this case was willful or whether Southern

Fiber and Turton were innocent trespassers preclude summary judgment on the issue

of liability. See *Lee*, 303 Ga. App. at 644 (1) (whether innocent trespasser doctrine

applies is for the jury to decide).

On appeal, Woodstone argues that Southern Fiber and Turton are liable as a

matter of law for trespass based on their failure to pay a franchise fee to the City of

Cordele to use its right-of-way or based on their failure to comply with "numerous

municipal ordinances[.]" These arguments fail for a number of reasons. First,

Southern Fiber and Turton specifically state in their appellate briefs that they "are not

relying on any right-of-way to justify their entry upon land or installation of internet

components." Second, this Court already has rejected any strict liability argument in

the context of a trespass action, finding that the language of the statute prohibiting

trespassing on an individual's property

> does not impose a blanket rule of absolute liability on all trespassers. With the exception of the situation where a party is engaged in an abnormally dangerous activity, an unintentional and nonnegligent entry onto another's land does not automatically subject an individual to liability even though the entry causes harm to the possessor.

*C. W. Matthews Contracting Co. v. Wells*, 147 Ga. App. 457, 458 (1) (249 SE2d 281)

(1978) (citation omitted).[7]

Third, in support of its argument, Woodstone relies on the affidavit testimony

of real estate attorney Jeremy Lynch, who discusses numerous local ordinances and

the city Code.[8] However, Woodstone has failed to cite to any municipal ordinances

in the appellate record, and it does not appear from the record before us that either

originals or properly certified copies of the ordinances appear in the record. It is well

---

[7] This case rejected the imposition of strict liability under former Code § 105-1401, which is identical to OCGA § 51-9-1: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." *Brand v. Montega Corp.*, 233 Ga. 32, 33-34 (2) (209 SE2d 581) (1974), quoting former Code § 105-1401.

[8] On September 30, 2019, Southern Fiber and Turton moved to disqualify Lynch as an expert and exclude his testimony, and they assert that Woodstone did not object to the motion, but the record does not contain any order granting the motion or excluding this testimony.

15

settled that neither the superior courts nor the appellate courts can take judicial notice of a city ordinance, or adjudicate a claim or defense based on a city ordinance, unless the ordinance has been properly presented, which includes either production of the original ordinance or a certified copy thereof. See *Whitfield v. City of Atlanta*, 296 Ga. 641, 641-642 (769 SE2d 76) (2015); *Cormier v. Willis*, 313 Ga. App. 699, 701 (1) (722 SE2d 416) (2012)*; Latimore v. City of Atlanta*, 289 Ga. App. 85, 86-87 (2) (656 SE2d 222) (2008). Because Woodstone failed to properly plead and prove the local ordinances, neither the trial court nor this Court is authorized to rely on them as a basis for a ruling on the trespass claim. See *Sweeney v. Lowe*, 325 Ga. App. 883, 883 (755 SE2d 813) (2014) ("trial court would have been in error if it had considered the terms of an ordinance not properly before the court") (citation and punctuation omitted); *Cormier*, 313 Ga. App. at 701 (1) ("Because the record does not contain proper proof of the local ordinance, we cannot consider it, and any argument based on its purported language provides no basis for reversing the trial court's order.").

Based on the appellate record before us, the trial court did not err in denying Woodstone's motion for summary judgment on the issue of liability.

2. In related arguments, Woodstone asserts that the trial court erred in granting summary judgment to Southern Fiber and Turton on Woodstone's claim for punitive

damages and in denying Woodstone's motion to compel discovery of Southern Fiber's and Turton's financial documents. We agree.

Under OCGA § 51-12-5.1 (b), punitive damages may be awarded in tort actions in which clear and convincing evidence proves that a defendant's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." As the Georgia Supreme Court has noted, "[a] conscious indifference to consequences relates to an intentional disregard of the rights of another. Willful and intentional misconduct is not essential." *Tyler v. Lincoln*, 272 Ga. 118, 120 (1) (527 SE2d 180) (2000) (citations and punctuation omitted). Indeed,

> [w]hether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence only creates an inference of the defendants' conscious indifference to the consequences of their acts. Punitive damages may be awarded even when actual damages are small.

*Weller v. Blake*, 315 Ga. App. 214, 219-220 (3) (a) (726 SE2d 698) (2012) (footnotes and punctuation omitted).

The trial court in this case found that Woodstone failed to meet its burden of showing that Southern Fiber's and Turton's actions demonstrated willful misconduct,

17

malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. The court, therefore, granted Southern Fiber and Turton's motion for summary judgment on Woodstone's claim for punitive damages, and, based on law that the discovery of a party's financial condition is not permitted unless facts give rise to punitive damages liability,[9] the trial court denied Woodstone's motion to compel the production of Southern Fiber's and Turton's financial documents.

However, as our Supreme Court has explained in a case involving trespass, "a trespass is an intentional act. Thus, a wilful repetition of a trespass will authorize a claim for punitive damages." *Tyler*, 272 Ga. at 120 (1) (citations omitted). While that case involved both a trespass claim and a nuisance claim, the Supreme Court did not differentiate the claims when it reversed the grant of summary judgment on the punitive damages claim based on circumstances raising material issues of fact about the plaintiffs' claims of trespass and nuisance. Id. at 120-121.

---

[9] See *Holman v. Burgess*, 199 Ga. App. 61, 64 (404 SE2d 144) (1991) (a party is "not entitled to discover information concerning [another party's] personal financial resources absent an evidentiary showing (by affidavit, discovery responses, or otherwise) that a factual basis existed for [the] punitive damage claim").

It is true that based on the evidence in the record a jury would be authorized to find that Southern Fiber and Turton were innocent trespassers, in which case punitive damages would not be warranted. It is equally true, however, that based on the evidence in the record a jury would be authorized to find that Southern Fiber and Turton were on notice that Crenshaw likely did not want fiber internet and yet, without verifying this information or seeking permission, willfully trespassed on Woodstone's property on two separate occasions. Such a finding would create "an inference of the defendants' conscious indifference to the consequences of their acts[,]" *Weller*, 315 Ga. App. at 220 (3) (a) (punctuation omitted), and authorize a jury to award punitive damages if it determines an "entire want of care in securing authority for placement of cable over [Woodstone's] property." *Rossee Oil Co. v. BellSouth Telecommunications, Inc.*, 212 Ga. App. 235, 236 (441 SE2d 464) (1994). Accord *McDonald v. Silver Hill Homes*, 343 Ga. App. 194, 196 (1) (806 SE2d 651) (2017) (reversing grant of summary judgment on punitive damages claim where evidence presented genuine issues of material fact as to plaintiff's trespass and nuisance claims) (physical precedent only); *Camp Cherokee, Inc. v. Marina Lane, LLC*, 316 Ga. App. 366, 373-374 (4) (b) (729 SE2d 510) (2012) (reversing grant of summary judgment on punitive damages claim where evidence presented genuine

issues of material fact as to whether the trespass onto the plaintiff's property was knowing, willful, and a conscious indifference to the plaintiff's property rights); *LN West Paces Ferry Assoc.*, 306 Ga. App. at 644-645 (1) (a) (affirming jury award for punitive damages after finding that the evidence established an intentional trespass when the defendant directed a contractor to tie his plumbing into neighbor's manhole with knowledge that he did not have the neighbor's permission or an easement authorizing the intrusion onto the neighbor's property).

The trial court therefore erred in granting Southern Fiber and Turton's motion for summary judgment on Woodstone's punitive damages claim at this juncture. In addition, because the trial court based its denial of Woodstone's motion to compel discovery of Southern Fiber's and Turton's financial records on its conclusion that punitive damages were not warranted, we hereby reverse that order and remand for the trial court to revisit this order and determine whether Woodstone's motion to compel, and for associated attorney fees, has merit given the ruling of this Court.

3. Woodstone next contends that the trial court erred in denying its motion for summary judgment on Southern Fiber's and Turton's "Third Defenses" and counterclaims for fraud. The third defenses assert that Woodstone's claims are fraudulent in nature, and the counterclaims assert a claim for fraud based on

Woodstone's (via Crenshaw) "numerous false representations of material facts in an effort to extract a large and unreasonable sum of money from Defendant[s] for an alleged trespass, even after the parties reached the principal terms of a settlement." The false representations specified in the counterclaims include statements "that a certain water line was busted by Defendant[s] and that Plaintiff wanted Defendant[s] to leave the conduit and hand holes in place on Plaintiff's property." According to Southern Fiber and Turton, Crenshaw made these representations knowing they were false, and Southern Fiber and Turton "justifiably relied on Plaintiff's misrepresentations by, among other things, leaving the conduit, hand holes, and meter boxes on Plaintiff's property and repairing numerous leaks for which Defendant was not responsible." Woodstone raises a persuasive argument that it was entitled to summary judgment on these defenses and counterclaims for fraud.

It is well established that the tort of fraud has five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff. *Roberts v. Nessim*, 297 Ga. App. 278, 284 (1) (b) (676 SE2d 734) (2009). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." Id. "So long

21

as one essential element under any theory of recovery is lacking the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." *Nash v. Studdard*, 294 Ga. App. 845, 849 (1) (670 SE2d 508) (2008) (summary judgment appropriate absent genuine issue of material fact regarding party's reliance on alleged misrepresentations to his detriment); *Dockens v. Runkle Consulting, Inc.*, 285 Ga. App. 896, 901 (2) (b) (648 SE2d 80) (2007) (same).

Setting aside the question of whether the other elements of fraud are shown, in this case we need only focus on the "false representation," "intention to induce the plaintiff to act or refrain from acting," and "justifiable reliance" elements. See *Howard v. McFarland*, 237 Ga. App. 483, 483-484 (1) (515 SE2d 629) (1999) (physical precedent only). To avoid summary judgment, Southern Fiber and Turton must show that the representations Woodstone made via Crenshaw were false, that Crenshaw made the representations in an "effort to extract a large and unreasonable sum of money from Defendant[s] for an alleged trespass," and that they justifiably relied on the alleged false representations. They have failed to do so.

(a) *Representation that "a certain water line was busted[.]"* We first turn to Southern Fiber's and Turton's allegations that Woodstone committed fraud when

22

Crenshaw represented that Southern Fiber was responsible for breaking a certain water line. Turton testified that the fraud counterclaim was based on the fact that Crenshaw "knowingly led [Turton] to believe" Southern Fiber was responsible for the second water leak, which occurred on October 25, 2017. According to Turton, Crenshaw knew "right up front that it was not [Southern Fiber] that caused [the second leak], so that would be fraud."

This fraud allegation, however, fails as a matter of law based on Turton's deposition testimony. Turton admitted that he "never . . . had any question" and knew immediately upon arriving at the scene that Crenshaw's statement about the water leak was incorrect; he "agree[d] a hundred percent" that as soon as he got to Woodstone Townhouses he knew it was not Southern Fiber that broke the water line. Despite knowing that Southern Fiber did not cause the broken water line on that occasion, Southern Fiber repaired the leak anyway without any expectation of compensation or waiver of Woodstone's claim for trespass. In fact, while Turton "thought that [fixing the water line] would take care of any kind of trespass claim[,]" Crenshaw and Turton never spoke about fixing the water leak as a waiver of any claim Woodstone might have against Southern Fiber and Turton. Because Turton was immediately aware that Crenshaw's representation about the cause of the water leak

23

was false, there could be no justifiable reliance on Crenshaw's statement, and Woodstone was entitled to summary judgment on this fraud allegation. See *Dockens*, 285 Ga. App. at 901 (2) (b); see also *Griffin v. State Bank*, 312 Ga. App. 87, 91 (1) (a) (718 SE2d 35) (2011) ("Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence.") (citation and punctuation omitted).

(b) *Representation that "Plaintiff wanted Defendant to leave the conduit and hand holes in place on Plaintiff's property[.]"* Southern Fiber and Turton also claim fraud based on Crenshaw's statement that he wanted Southern Fiber to leave the conduit and hand holes in place on Woodstone's property, a statement that Southern Fiber and Turton believed was an acceptance of their purported settlement offer on the trespass claim. Whether this statement was made as an acceptance of option 3 of Turton's alleged settlement letter, as part of a counter offer where Crenshaw demanded $10,000, or as a statement that the items should be left until the matter was resolved is irrelevant with respect to Southern Fiber's and Turton's fraud defenses and counterclaims because they have failed to demonstrate that Crenshaw's statement constitutes a fraudulent misrepresentation or that they justifiably relied on the statement.

24

First, as stated above, one of the elements necessary to prove fraud is a false representation – a "[w]illful misrepresentation of a material fact[.]" OCGA § 51-6-2 (a). Here, Crenshaw's statement to leave the conduit is not an actionable misrepresentation. It is a directory statement, not a false statement. "Consequently, because there was no actionable misrepresentation, an action for fraud based upon a misrepresentation must fail." *Remax North Atlanta v. Clark*, 244 Ga. App. 890, 894 (537 SE2d 138) (2000).

Moreover, "[e]ven if there was evidence of a willful misrepresentation, there is no evidence to suggest that, had [Southern Fiber and Turton] known the truth, [their] response to the correct information would have been any different." *Johnson v. Burrell*, 294 Ga. 301, 306 (3) (751 SE2d 301) (2013). Southern Fiber and Turton offered no evidence that they were fraudulently induced to perform or fail to perform any action – such as payment of a large sum of money – in reliance on Crenshaw's statement. In fact, the evidence specifically demonstrates that Southern Fiber and Turton did not rely on Crenshaw's statement to leave the conduit as settlement of the trespass claim because after Crenshaw made the statement to leave the conduit, Southern Fiber and Turton repaired the second water leak – knowing they did not cause the leak – in hope that their action "would take care of any kind of trespass

claim[.]" There is no evidence in the record that Southern Fiber and Turton justifiably relied on Crenshaw's directory statement to leave the conduit as settlement of the trespass claim or that they were deceived into paying a large sum of money to Woodstone as a result of Crenshaw's statement.

(c) *Allegations of fraud in appellate brief.* Although Southern Fiber and Turton argue in their appellate brief that Crenshaw falsely represented that they trespassed on Woodstone's property and that there was no utility easement on the property, they are precluded from pursuing any claims of fraud other than the allegations which have been specifically pled in their counterclaims. "In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity." OCGA § 9-11-9 (b). "[I]t is necessary that the complainant show, by specifications, wherein the fraud consists. Issuable facts must be charged." *Dockens*, 285 Ga. App. at 900 (2) (a) (citation omitted). This is an exception to the general liberality of pleading permitted under the Civil Practice Act. See *Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 90 (720 SE2d 370) (2011). For the same reason, the trial court's reliance on purported "false representations to force the Defendant[s] to engage in a business relationship" is error since this claim exceeds the scope of the representations specifically asserted in Southern Fiber's and Turton's counterclaims.

26

Because Southern Fiber and Turton have not shown any justifiable reliance on Crenshaw's false statement about their responsibility for the second water leak and have not shown that Crenshaw's directory statement to leave the conduit was a false misrepresentation, that the statement induced them to pay a large sum of money to Woodstone, or that they justifiably relied on the directory statement to their detriment, denial of summary judgment on the fraud defenses and counterclaims was error.

4. Woodstone also contends that the trial court erred in denying its motion for summary judgment on Southern Fiber's and Turton's defenses and counterclaims for promissory estoppel. We agree.

Southern Fiber's and Turton's defenses and counterclaims for promissory estoppel essentially mirror those asserted in connection with their fraud defenses and counterclaims. Specifically, Southern Fiber and Turton allege that "Plaintiff, through its actions and statements, promised Defendant that the above-described alleged trespass matter had been resolved and thereby ratified any alleged trespass of Defendant." As with the fraud claims, Southern Fiber and Turton argue that Crenshaw's direction to leave the conduit and meter boxes led them to believe that any trespass claim had been resolved as Crenshaw accepted option three of the purported settlement choices.

The trial court denied Woodstone's motion for summary judgment, concluding that questions of material fact exist regarding the existence of a settlement and whether there was reliance on that settlement. We disagree. The facts in this case do not support a conclusion that Woodstone promised to settle the trespass issue or that Southern Fiber and Turton detrimentally relied on any such promise by surrendering, forgoing, or rendering a valuable right.

The doctrine of promissory estoppel is encompassed within OCGA § 13-3-44 (a), which provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." To establish their promissory estoppel claims, Southern Fiber and Turton are required to show that

> (1) [Woodstone] made a promise or promises; (2) [Woodstone] should have reasonably expected [Southern Fiber and Turton] to rely on such promise; (3) [Southern Fiber and Turton] relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

28

*Mariner Healthcare, Inc. v. Foster*, 280 Ga. App. 406, 412 (5) (634 SE2d 162) (2006); accord *Rymer v. Polo Golf & Country Club Homeowners Assn., Inc.*, 335 Ga. App. 167, 171 (1) (b) (780 SE2d 95) (2015).

"[P]romissory estoppel basically substitutes action or forbearance (i.e., reliance) by the promisee for the consideration which would otherwise be lacking." *Pabian Outdoor-Aiken v. Dockery*, 253 Ga. App. 729, 731 (560 SE2d 280) (2002) (footnote and punctuation omitted). It is important to note that "estoppels are not favored by our law[,]" *Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 95 (2) (a) (718 SE2d 35) (2011) (citation and punctuation omitted), and the party asserting a promissory estoppel claim bears the burden of proving all elements of the claim. See *Goddard v. City of Albany*, 285 Ga. 882, 886 (3) (684 SE2d 635) (2009). "If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All other disputes of fact are rendered immaterial." *Tampa Bay Financial, Inc. v. Nordeen*, 272 Ga. App. 529, 535 (2) (612 SE2d 856) (2005) (citation and punctuation omitted).

(a) *Promise*. The threshold requirement for a promissory estoppel claim is that there be some enforceable promise by the defendant. See *Mooney v. Mooney*, 245 Ga. App. 780, 783-784 (538 SE2d 864) (2000). We therefore first turn to whether

Crenshaw's statement to leave the conduit constituted a promise to Southern Fiber and Turton that Woodstone's trespass claim was settled or resolved. Based on the record before us we find that Crenshaw's statement to leave the conduit was not an enforceable promise.

Although a promise need not meet the formal requirement of a contract to support a claim for promissory estoppel, it must have been communicated with sufficient particularity to be enforced. See *Mooney*, 245 Ga. App. at 783. Promissory estoppel cannot be based upon vague, indefinite promises. See id. at 783-784 (promise to help is too vague absent specifics to support a promissory estoppel claim); *Ga. Investments Intl., Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 673, 675-676 (1) (700 SE2d 662) (2010) (promise did not support a promissory estoppel claim because it was vague and indefinite as to material terms). Likewise, an "implied understanding" is not sufficient to support a promissory estoppel claim. See *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 422 (1) (d) (785 SE2d 78) (2016) (physical precedent only).

With those principles in mind, we conclude that Turton's subjective belief that a promise to settle was made does not create an enforceable promise in this case. The four option letter Turton presented to Crenshaw specifically indicated that the letter

30

was presented with the intention of obtaining "permission to build service to [Woodstone] apartments" and requested Crenshaw's thoughts regarding other options. According to the letter, if Crenshaw did not find the first two options suitable, Crenshaw should decide whether he wanted Turton to leave the conduit and meter boxes or remove the conduit and meter boxes. The letter does not reference any claim for trespass or any settlement of that claim.

In addition, even if the letter could be construed as a settlement offer, Southern Fiber and Turton erroneously allege in their counterclaims that Crenshaw accepted the offer because he "in no way intimated rejection of [their] settlement offer." Turton, however, admits that Crenshaw never actually stated he was choosing option 3 or settling the trespass issue; Crenshaw simply used the same language used in option 3 of the settlement letter. Based on these facts, Crenshaw's statement to leave the conduit did not constitute an enforceable promise to settle any trespass issue because it was a vague and indefinite statement. Accordingly, Crenshaw's statement cannot support a promissory estoppel claim.

(b) *Detrimental reliance and injustice*. Southern Fiber and Turton assert in their counterclaims that injustice would result if Woodstone's alleged promise is not enforced because they have been forced to pay attorney fees to defend Woodstone's

31

lawsuit. In their appellate brief, they claim "[t]here is no doubt injustice will result if [they] must attend a jury trial on a trespass claim that was previously settled." However, this is not the type of detrimental reliance or injustice contemplated by the promissory estoppel doctrine. See generally *Lane Supply, Inc. v. W. H. Ferguson & Sons, Inc.*, 286 Ga. App. 512, 516-518 (2) (649 SE2d 614) (2007) (actions did not demonstrate harm or cause a party to forego a valuable legal right to its detriment).

To constitute sufficient consideration to support a promissory estoppel claim, a party must show "[d]etrimental reliance which causes a substantial change in position." *Clark v. Byrd*, 254 Ga. App. 826, 828 (1) (b) (564 SE2d 742) (2002) (jury issue exists where facts show that a party induced conduct through a promise of settlement that probably would provide a complete defense) (physical precedent only). Southern Fiber's and Turton's pleadings fail to demonstrate that they "changed their position to their detriment by surrendering, forgoing, or rendering a valuable right." *Mariner Healthcare*, 280 Ga. App. at 412 (5) (footnote omitted). There is no evidence that Southern Fiber or Turton were harmed by or detrimentally relied on Crenshaw's alleged promise to settle the trespass action. In fact, Turton testified by deposition that following Crenshaw's statement, Southern Fiber did not return to

Woodstone Townhouses to complete the installation because Turton "wasn't going to pay [Crenshaw] $10,000[.]"

For these combined reasons, we conclude that there are no genuine issues of material fact regarding the promissory estoppel defenses and counterclaims, and the trial court therefore erred in failing to grant Woodstone's motion for summary judgment as to these claims and defenses.

5. Woodstone asserts that the trial court also erred in denying its motion for summary judgment on a number of Southern Fiber's and Turton's defenses. While the trial court's order does not explicitly address Woodstone's arguments regarding these defenses, it denies Woodstone's motion "as to the remaining claims." Because the record clearly shows that Woodstone's contentions were before the trial court when ruling on the motion for summary judgment and our review of the trial court's summary judgment order is de novo, *Latson v. Boaz*, 278 Ga. 113, 113 (598 SE2d 485) (2004), we address the issues on appeal.

We first note that Southern Fiber and Turton failed to present any argument contradicting Woodstone's assertions in their trial brief opposing the motion for summary judgment or in their appellate brief. Instead, they argued that their defenses are not subject to summary judgment, citing the fact that defenses are not referenced

33

within OCGA § 9-11-56 (a) or (b), which specifically states that summary judgment applies to a "claim, counterclaim, or cross-claim[.]" Southern Fiber and Turton assert that the decision as to defenses should be made during a jury charge conference so the trial court can determine whether evidence was presented to support the defenses. We disagree.

Contrary to Southern Fiber and Turton's argument, parties routinely move for summary judgment on defenses, and trial courts routinely consider the merit of defenses in the context of summary judgment motions. See, e.g., *100 Lakeside Trail Trust v. Bank of America, N.A.*, 342 Ga. App. 762, 763 (804 SE2d 719) (2017) (affirming trial court's grant of summary judgment on defenses, including failure to state a claim upon which relief can be granted, lack of privity between the parties, unclean hands, res judicata, judicial estoppel, laches, and lack of proper process and service); *Alston & Bird LLP v. Mellon Ventures II, L.P.*, 307 Ga. App. 640, 643-645 (3) (706 SE2d 652) (2010) (affirming trial court's grant of summary judgment on defenses of comparative negligence, failure to mitigate damages, waiver, estoppel, and voluntary payment); *Anderson v. Benton*, 295 Ga. App. 851, 855 (2) (673 SE2d 338) (2009) (affirming trial court's grant of summary judgment on defenses of accord and satisfaction, release and/or settlement, and estoppel). In fact, the standard is well

34

settled that "[a] plaintiff who moves for summary judgment on an affirmative defense has the burden of piercing that defense. If the plaintiff meets that burden, the burden then shifts to the defendant to point to evidence showing a genuine issue of material fact for trial." *Head v. de Souse*, 353 Ga. App. 309, 314-315 (2) (836 SE2d 227) (2019) (citations omitted). Thus, once Woodstone presented evidence piercing Southern Fiber's and Turton's defenses,

> [t]he burden then shifted to [Southern Fiber and Turton] to set forth facts showing that there was a genuine issue for trial. [Southern Fiber and Turton] having failed to do so, no questions of fact remained. . . . Where the evidence of record pierced [Southern Fiber's and Turton's] defensive pleadings and [Southern Fiber and Turton] failed to demonstrate that any issue of fact remains with regard to those defenses, [the trial court should have granted Woodstone's] summary judgment for any reasons urged on appeal.

*Clay v. Oxendine*, 285 Ga. App. 50, 56 (1) (645 SE2d 553) (2007) (citations and punctuation omitted). See also *London v. Bank of the South*, 170 Ga. App. 44, 47-48 (3) (315 E2d 924) (1984) (summary judgment on affirmative defenses appropriate where defendant failed to come forward with any evidence demonstrating material issues of fact). With that standard in mind, we turn to the merits of Woodstone's motion for summary judgment as to various defenses.

(a) *First Defenses*. Woodstone asserts the trial court erred in denying its motion for summary judgment on Southern Fiber's and Turton's "First Defenses," which state: "Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendant." In light of our holding in Divisions 1 and 8 affirming the trial court's denial of summary judgment to both parties on Woodstone's trespass claim based on the existence of genuine issues of material fact, it appears clear that Southern Fiber's and Turton's "First Defenses" lack merit. It is well settled that a complaint should not be dismissed

> unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. Put another way, if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

*Campbell v. Ailion*, 338 Ga. App. 382, 385 (790 SE2d 68) (2016) (citation omitted). Accordingly, the trial court erred in denying summary judgment to Woodstone on these defenses.

(b) *Eighth Defenses*. Woodstone asserts the trial court erred in denying summary judgment on Southern Fiber's and Turton's "Eighth Defenses": "Plaintiff ratified any of Defendant's alleged trespass or other actions at issue in this suit." We agree.

36

The most common use of ratification occurs when "a principal, with full knowledge of all the material facts, accepts the benefits of an unauthorized act, or retains such benefits after discovering the material facts." *Brock v. Yale Mtg. Corp.*, 287 Ga. 849, 855 (3) (700 SE2d 583) (2010) (citations omitted); see also *Ferguson v. Golf Course Consultants, Inc.*, 243 Ga. 112, 113 (252 SE2d 907) (1979) (ratification of a forged signature occurred when the principal knowingly consented to a sale in return for financial benefits); *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 511-512 (1) (b) (765 SE2d 681) (2014) (ratification could not occur absent evidence principal knew of agent's unauthorized act).

Here, once Woodstone moved for summary judgment on Southern Fiber's and Turton's ratification defenses and presented evidence that ratification is inapplicable under the current set of facts, it was incumbent upon Southern Fiber and Turton to then point to evidence showing a genuine issue of material fact regarding the application of this defense. See *Head*, 353 Ga. App. at 314-315; *Clay*, 285 Ga. App. at 56 (1). As stated above, however, Southern Fiber and Turton have utterly failed to respond to the merits of Woodstone's argument or point to any evidence supporting the ratification defenses in their briefs. There is no evidence demonstrating that a principal/agent analysis applies here, that an agent performed an unauthorized act, or

37

that Woodstone retained any benefit deriving from the unauthorized act. Where the existence of an agency relationship is relied upon, the burden of proof rests with the party asserting the existence of such relationship. *Carter v. Kim*, 157 Ga. App. 418, 418 (277 SE2d 776) (1981). Based on Southern Fiber's and Turton's failure to present any evidence that the ratification defense applies under the circumstances presented in this case, we find that the trial court erred in denying summary judgment to Woodstone on this defense.

(c) *Ninth Defenses*. Woodstone asserts the trial court erred in denying summary judgment on Southern Fiber's and Turton's "Ninth Defenses[,]" which state: "Plaintiff's claims, or a portion thereof, are barred by laches." As with the other defenses, Southern Fiber and Turton have failed to address the merits of Woodstone's argument or otherwise point to evidence in the record supporting the validity of this defense, and we do not find the defense applicable in this case.

First of all, "[i]t is a longstanding and well-established rule that the doctrine of laches is an equitable defense which is not applicable to actions at law," such as the one before us. See *DBL, Inc. v. Carson*, 284 Ga. App. 898, 906 (4) (645 SE2d 56) (2007). "The doctrine of laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right." *Stuckey v. Storms*, 265 Ga. 491, 491

(1) (458 SE2d 344) (1995); accord *Hyde v. Gill*, 236 Ga. App. 729, 733-734 (2) (513 SE2d 278) (1999). See also OCGA § 9-3-3 ("Unless otherwise provided by law, limitation statutes shall apply equally to all courts. In addition, courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights."). Thus, the defense is not available in this complaint for trespass.

Moreover, Southern Fiber and Turton presumably base this defense on Woodstone's delay in filing the trespass action. However, "[t]o establish the affirmative defense of laches, [Southern Fiber and Turton] were required to come forward with evidence showing inexcusable delay and prejudice resulting therefrom." *Harvey v. Bank One, N.A.*, 290 Ga. App. 55, 58 (2) (658 SE2d 824) (2008) (citation omitted). "The mere lapse of time is insufficient to establish the affirmative defense of laches." Id. Absent any evidence that the defense of laches applies under the facts of this case, the trial court erred in denying Woodstone's motion for summary judgment on this defense.

(d) *Fifteenth Defense*. According to Woodstone, it was entitled to summary judgment on Turton's "Fifteenth Defense." This defense asserted that "Plaintiff's claims against Defendant are barred by the corporate shield because all actions

39

allegedly taken by Defendant were in the course and scope of his capacity as a corporate representative and actor for Defendant Southern Fiber Worx, LLC." As with the above arguments, Southern Fiber and Turton's appellate brief does not address the merits of Woodstone's arguments or point to any evidence in the record supporting this defense. After reviewing the record, however, we agree with Woodstone that summary judgment should have been granted on this defense.

The main purpose of incorporation is to insulate a company's officers and shareholders from liability "so that the operation of a corporate business does not render officers and shareholders personally liable for corporate acts." *Brown v. Rentz*, 212 Ga. App. 275, 276 (1) (441 SE2d 876) (1994) (citation omitted). "Generally, one who merely occupies the capacity of a corporate officer cannot be held to be vicariously liable for such damages as would otherwise be recoverable from his corporate principal." *Fields Bros. Gen. Contractors, Inc. v. Ruecksties*, 288 Ga. App. 674, 677 (2) (655 SE2d 282) (2007) (footnote and punctuation omitted). However, there is an exception to this general rule:

> An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, and an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein.

40

*Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997) (citations and punctuation omitted); accord *Almond v. McCranie*, 283 Ga. App. 887, 889 (2) (643 SE2d 535) (2007).

Here, even if we assume that Turton, the owner of Southern Fiber, did not trespass in his individual capacity, the evidence establishes that he was personally on Woodstone's property while Southern Fiber dug conduit lines, and, in fact, he determined where to dig on the property and personally supervised the conduit installation. There is also evidence that Turton supervised, directed, and even assisted in repairing two water leaks on Woodstone's property, one of which occurred when GBT employees struck a water line while laying the cable: "I would supervise and help . . . I would dig . . . I'm physically out there with [the employees] doing a lot of the work[.]" Given this evidence, Turton can be held personally liable for any trespass on Woodstone's property because he specifically directed or participated in the trespass. See *Jennings*, 226 Ga. App. at 767 (1) (reversing summary judgment to vice-president and 50 percent shareholder of company on personal liability because evidence showed he personally supervised and directed negligent repairs); *Cherry v. Ward*, 204 Ga. App. 833, 834 (1) (a) (420 SE2d 763) (1992) (reversing directed verdict to president and sole stockholder of company on personal liability where

41

evidence established that he personally supervised and specifically directed negligent construction of house); *Brown*, 212 Ga. App. at 276-277 (2) (reversing summary judgment to shareholder, director, and officer of company on personal liability where evidence showed he oversaw subcontract work, personally performed some repair work, and personally responded when called by plaintiffs).

Once Woodstone presented evidence piercing Turton's assertion of the corporate shield defense, it was incumbent upon Turton to come forward with evidence demonstrating a question of material fact supporting his corporate shield defense. See *Clay*, 285 Ga. App. at 56 (1). Turton failed to do so. Accordingly, because there is evidence from which the jury could find personal liability on the part of Turton, the trial court erred in denying Woodstone's motion for summary judgment on Turton's defense of the corporate shield doctrine.

6. Woodstone maintains that the trial court erred in denying its motion for summary judgment on Southern Fiber's and Turton's two separate counterclaims for attorney fees under OCGA §§ 9-15-14[10] and 13-6-11.[11] Southern Fiber's Sixth

---

[10] OCGA § 9-15-14 (a) provides for a mandatory award of attorney fees and expenses if a party asserts a claim or defense as to which "there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim[.]" OCGA § 9-15-14 (b) provides for a discretionary award of fees and expenses if the court "finds that an

counterclaim and Turton's Seventh counterclaim assert claims for attorney fees and expenses incurred in defending against Woodstone's allegedly frivolous claims, and Southern Fiber's Seventh counterclaim and Turton's Eighth counterclaim assert claims for attorney fees and expenses incurred in pursuing their counterclaims.

We affirm the trial court's denial of Woodstone's motion for summary judgment on Southern Fiber's and Turton's counterclaims for OCGA § 9-15-14 attorney fees for defending against Woodstone's suit, but we reverse the trial court's denial of summary judgment with respect to OCGA § 13-6-11 attorney fees and OCGA § 9-15-14 attorney fees for pursuing their counterclaims.

(a) *Defending allegedly frivolous claims*. We first turn to Southern Fiber's and Turton's counterclaims for OCGA § 9-15-14 attorney fees based on defending against Woodstone's allegedly frivolous claims. In so doing, we note that "the denial of summary judgment to a party who is ultimately successful in litigation does not

---

attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]"

[11] OCGA § 13-6-11 provides for the award of expenses of litigation where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

constitute a binding determination that the party cannot recover attorney fees under [OCGA § 9-15-14].” *Bacon v. Volvo Svc. Center, Inc.*, 288 Ga. App. 399, 401 (654 SE2d 225) (2007). Thus, the fact that the trial court has found questions of material fact regarding the trespass claim does not automatically entitle Woodstone to summary judgment on these counterclaims. In addition, although Woodstone correctly notes that a claim for OCGA § 9-15-14 attorney fees must be sought via a motion and not by answer or counterclaim, *Glass v. Glover*, 241 Ga. App. 838, 839 (528 SE2d 262) (2000), this fact does not demand that Woodstone receive summary judgment because “a counterclaim [can] be converted into a motion based upon the oral request of counsel at a hearing or at trial[.]” *Nesbit v. Nesbit*, 295 Ga. App. 763, 765 (673 SE2d 272) (2009). Based on the record before us, summary judgment on this particular ground of Southern Fiber’s Sixth counterclaim and Turton’s Seventh counterclaim is premature, and the trial court did not err in denying summary judgment at this juncture.

Turning next to Southern Fiber’s and Turton’s counterclaims for OCGA § 13-6-11 attorney fees incurred in defending against Woodstone’s allegedly frivolous complaint, we note that Southern Fiber and Turton are not entitled to these fees based on the clear language of the statute. OCGA § 13-6-11 permits an award of expenses

44

of litigation "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Under the plain language of the statute, only a plaintiff is eligible to recover the expenses incurred in prosecuting his or her claim. It is well-established that OCGA § 13-6-11 "does not permit the recovery of expenses incurred in *defending* a lawsuit." *Dennis-Smith v. Freeman*, 277 Ga. App. 822, 825 (3) (627 SE2d 872) (2006) (emphasis in original); see also *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 310 (3) (732 SE2d 449) (2012); *Emerson v. Brookmere Homeowners Assn.*, 311 Ga. App. 371, 372 (715 SE2d 775) (2011). The trial court, therefore, erred in denying Woodstone's motion for summary judgment as to this particular ground of Southern Fiber's Sixth counterclaim and Turton's Seventh counterclaim.

(b) *Pursuing counterclaims*. While Southern Fiber and Turton correctly point out that attorney fees can be awarded on counterclaims, no counterclaims remain pending in this case. The trial court granted summary judgment to Woodstone on Southern Fiber's and Turton's counterclaims for quantum meruit, slander, and libel, as well as Turton's counterclaim for intentional infliction of emotional distress. And, in Divisions 3 and 4, this Court has reversed the trial court's denial of summary

45

judgment to Woodstone on Southern Fiber's and Turton's counterclaims for fraud and promissory estoppel. Because Southern Fiber's and Turton's counterclaims fail, their derivative claims for attorney fees also fail. See *Wright v. Apartment Investment and Mgmt. Co.*, 315 Ga. App. 587, 590 (1) (a) n.6 (726 SE2d 779) (2012) ("Inasmuch as [plaintiff] had no tort claim for breach of fiduciary duty or fraud that survived, its derivative claims for punitive damages and attorney fees also failed."); see also *Johnson v. Johnson*, 323 Ga. App. 836, 842 (747 SE2d 518) (2013). The trial court erred in denying summary judgment to Woodstone on Southern Fiber's Seventh counterclaim and Turton's Eighth counterclaim in their entirety.

7. Finally, Woodstone contends that the trial court erred in denying summary judgment on Southern Fiber's and Turton's counterclaims for punitive damages. Southern Fiber's claim for punitive damages alleges that Woodstone's "actions related to the above-described matter, including [Woodstone's] and its representatives' intentionally false and malicious statements at issue in Counterclaim One [quantum meruit], demonstrate willful misconduct, malice, fraud, wantonness, and oppression." Turton's counterclaim for punitive damages alleges that Woodstone's "actions related to the above-described matter demonstrate willful

46

misconduct, malice, fraud, wantonness, and oppression." We agree that Southern Fiber's and Turton's counterclaims for punitive damages fail as a matter of law.

First of all, the trial court granted Woodstone's motion for summary judgment on Southern Fiber's and Turton's counterclaims for quantum meruit, slander, and libel, and this determination has not been appealed. In addition, in their appellate brief, Southern Fiber and Turton assert that summary judgment is not appropriate on their punitive damages counterclaims because their counterclaims for fraud and promissory estoppel are still pending. However, in Divisions 3 and 4 of this Opinion we reversed the trial court's denial of summary judgment to Woodstone on those claims. "Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." *Johnson*, 323 Ga. App. at 842 (citation and punctuation omitted); accord *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 750 (5) (667 SE2d 716) (2008). Accordingly, Southern Fiber's and Turton's counterclaims for punitive damages lack merit.

*Case No. A20A1884*

8. In this cross-appeal, Southern Fiber and Turton claim that the trial court erred in denying their motion for summary judgment on Woodstone's claims because (a) Woodstone failed "to provide any evidence of the particulars of [their] trespass[,]"

47

(b) the area in which they worked was covered by a blanket utility easement, (c) Woodstone tenants invited them to perform the work, and (d) they complied with industry standards. As we noted in Division 1, whether an individual is an innocent trespasser or willfully trespassed on property is generally a question of fact, see *LN West Paces Ferry Assoc.*, 306 Ga. App. at 644 (1) (a), and given the questions of material fact in this case, the trial court did not err in denying summary judgment to Woodstone. Neither did the trial court err in denying summary judgment to Southern Fiber and Turton, despite their numerous arguments to the contrary.

(a) *Lack of particulars regarding trespass.* Southern Fiber and Turton first assert that Woodstone failed to provide evidence specifically demonstrating its property boundary lines and the area in which Southern Fiber and Turton allegedly trespassed within those boundary lines. They base this argument on the trial court's order granting Southern Fiber and Turton partial summary judgment as to any trespass that allegedly occurred on property not belonging to Woodstone. This argument lacks merit.

Woodstone's complaint alleges that Southern Fiber and Turton trespassed on its property, two separate tracts of property were designated on a map in different colors and provided to the trial court, and the trial court specifically found that

48

Southern Fiber and Turton did not trespass as a matter of law on one tract because it did not belong to Woodstone. The trial court did not grant Southern Fiber and Turton summary judgment on the other tract of land, specifically finding that a legal description of the other tract is included in Woodstone's Declaration of Covenants, Conditions and Restrictions. Thus, contrary to Southern Fiber and Turton's argument, there is evidence from which a jury could find that Southern Fiber and Turton trespassed on property owned by Woodstone.

(b) *Blanket utility easement.* Southern Fiber and Turton argue that they should have been granted summary judgment on Woodstone's trespass claim because "a recorded, valid blanket utility easement granted utility companies the authority to enter the [Woodstone] apartment complex property and install internet components." We are unpersuaded that the trial court erred in denying summary judgment to Southern Fiber and Turton on this ground because the evidence demonstrates that, even if the easement is still in existence, questions of material fact exist regarding whether the easement is available to Southern Fiber and Turton.

It is undisputed that William Rea, Jr. constructed Woodstone Townhouses in the early 1980s, originally intending to market the units as condominiums. In 1983, he executed and recorded a Declaration of Covenants, Conditions and Restrictions

for Woodstone Townhouses. According to the document, the covenants and restrictions ran for a term of twenty years, at which time they would automatically extend for successive periods of ten years. This document contained a blanket utility easement as follows:

> There is hereby granted a blanket easement upon, across, over and under the properties for ingress, egress, installation, replacing, repairing, and maintaining . . . all utilities, including, but not limited to water, sewers, telephones and electricity. By virtue of this easement, it shall be expressly permissible for the providing utility company or other supplier or servicer to erect and maintain the necessary poles and other necessary equipment on the properties[.]

Woodstone believed that the easement was only binding for 20 years from issuance and therefore expired in 2004. In fact, real estate attorney Lynch testified by affidavit that the Declaration was invalidated when Rea marketed the units for lease rather than sale and failed to comply with other requirements of the Georgia Condominium Act, OCGA § 44-3-70 et seq.[12] Other experts opined that this blanket easement was never

---

[12] As stated in footnote 7, Southern Fiber and Turton filed a motion to disqualify Lynch from testifying as an expert, but the record does not contain any order granting the motion or excluding this testimony. Further, Lynch could still testify as a lay witness regarding his personal experience. See *Xiong v. Lankford*, 226 Ga. App. 126, 128 (2) (485 SE2d 534) (1997) ("A witness in a position to know from his own experience what occurs in the ordinary course of affairs in a given situation should be allowed to testify, the credit to be given it being left to the jury.") (citation and punctuation omitted).

cancelled and is still valid even though the property was never marketed or sold as condominiums.

Even assuming, however, that the blanket easement is still valid, a subsequent sentence in the same section of the blanket easement creates a question of material fact as to whether the easement is available to Southern Fiber and Turton:

> Notwithstanding anything to the contrary contained in this paragraph, no sewers, electrical lines, water lines, or other utilities may be installed or relocated on the properties except as may be approved by the Association's Board of Directors or as provided in Article II, Section 1(c), or Article VI.

In ruling on Woodstone's motion for summary judgment, the trial court concluded that even though the Woodstone apartment complex did not possess a board of directors, the blanket easement found in Woodstone's Declarations of Covenants, Conditions and Restrictions did not as a matter of law give Southern Fiber and Turton the right to enter Woodstone's property without either consent of the Woodstone governing body or the owner, which admittedly was not received. We agree.

Southern Fiber and Turton cite the doctrine of impossibility to argue that the provision is unenforceable because there is no board of directors. See *Roane v. Sophisticated Data Research, Inc.*, 259 Ga. 410, 410 (383 SE2d 133) (1989) ("Where an agreement among shareholders provided that, in the event of a specified

51

occurrence, the value of their shares would be determined by a designated accounting firm, the refusal of that accounting firm to act makes the evaluation provision of the contract unenforceable by reason of impossibility."); *Fowler v. White*, 249 Ga. 853, 854 (295 SE2d 83) (1982) (finding a note was not in default in a foreclosure action because no entity existed to collect payment, and the plaintiff tendered payment within a reasonable time after there came into existence a legal entity capable of receiving it). However, it does not appear that this doctrine has been applied in a trespass case to permit a third party to enter property without permission of the owner, and we decline to do so here. The Declaration at issue expressly contemplates transfer of the authority to grant permission for utility companies to enter the property from the declarant to a board of directors, and, in the absence of a board of directors, a utility company – as in any case without a Declaration – must simply obtain permission of the property owner or ensure that a valid easement exists.

Southern Fiber and Turton also rely on the affidavit of Rea to support their contention that the provision requiring utility companies to obtain approval before installing or relocating lines on Woodstone's property is unenforceable.[13] In his

[13] In its Brief of Cross-Appellee, Woodstone cites to Rea's deposition transcript to support a number of factual assertions. However, this deposition is not included in the record on appeal, even though Woodstone's brief indicated that Woodstone

affidavit, Rea explained his intention to allow companies like Southern Fiber the right to enter the property to install conduit and other communications components even if the apartment was not used as townhouses. He further stated,

> [i]n the event the property was not used for townhouses and there was no Board of Directors, [he] intended to waive the requirement that utility and communication companies first obtain permission from the Board of Directors before entering the property to install communication components.

Notwithstanding Rea's intention, the Declaration does not indicate such a waiver, and "[a] covenant plainly expressed cannot be broadened by parole proof of a covenantor." *King v. Baker*, 214 Ga. App. 229, 235 (5) (447 SE2d 129) (1994) (citation omitted).

Indeed, contrary to Rea's affidavit testimony announcing his intention, the easement specifically and unambiguously provided that specific utility providers would have to receive permission prior to installing lines on the property. The fact that the property was not developed as condominiums and no board of directors was ever established does not, as argued by Southern Fiber and Turton, eliminate the responsibility of a utility provider from ascertaining that a valid easement exists or seeking out the owner of the property and obtaining permission before entering the

was going to supplement the record with the deposition.

53

property to install utilities. Clearly questions of material fact exist regarding whether Southern Fiber and Turten could justifiably rely on the blanket utility easement.

(c) *Tenant invitation.* Southern Fiber and Turton next argue that Woodstone tenants possessed authority to invite companies to enter the apartment complex and install internet components, and the tenants exercised their right in this case by inviting Southern Fiber and Turton on the Woodstone property. Southern Fiber and Turton, however, fail to support this assertion with any evidence in the record or any citation of authority. Instead, they point out that when asked which provision of the lease prohibited a tenant from inviting Southern Fiber and Turton onto the property to install internet components, Crenshaw cited paragraph three of the lease, and that paragraph, according to Southern Fiber and Turton, does not preclude them from entering Woodstone's premises. Paragraph 3 of the lease states: "Lessee shall make no changes whatever in the premises, nor paint or paper same inside or outside, nor drill holes or drive nails or screws in the walls, ceiling or floors without the written consent of Lessor."

Whether tenants complied with this lease provision is irrelevant. Even assuming for the sake of argument that Southern Fiber and Turten received tenant requests to install internet service, we agree with the trial court's conclusion that such

requests would not have vitiated the need for Southern Fiber and Turton to either dig on a valid easement or obtain the landowner's permission to enter the property and install the necessary components. Contrary to Southern Fiber and Turton's argument, OCGA § 44-7-11 does not give a tenant the power to control the common areas of the apartment complex unless the landlord has specifically given him that right. That statute specifically states, "[t]he tenant has no rights beyond the use of the land and tenements rented to him and such privileges as are necessary for the enjoyment of his use." While internet service might permit a tenant to better enjoy his apartment, we decline to rule that a tenant has the right to request internet service and permit service providers to dig across the property to lay cable unless a valid easement exists or permission has first been received from the landowner.

Southern Fiber and Turton also argue that they should not be held responsible for a trespass because other service providers purportedly entered Woodstone property when tenants invited them, without objection by Woodstone. Again, even if true, this fact is not dispositive of the trespass claim. "Consent to travel on the property cannot be implied even if the landowner has knowledge that others, on occasion, trespass on it." *Trammell v. Baird*, 262 Ga. 124, 125 (413 SE2d 445) (1992).

The trial court did not err in denying summary judgment to Southern Fiber and Turton based on these arguments.

(d) *Compliance with industry standards.* Southern Fiber and Turton also maintain that they were entitled to summary judgment on the trespass claim because the only expert testimony in the case demonstrates that Southern Fiber and Turton complied with industry standards in installing the conduits on Woodstone's property and, therefore, they were innocent trespassers as a matter of law. This argument fails for a number of reasons.

First, the only case cited by Southern Fiber and Turton in support of this argument involves negligent design and nuisance claims asserted in a trip-and-fall case. *Bartenfeld v. Chick-fil-A, Inc.*, 346 Ga. App. 759 (815 SE2d 273) (2018). In that case, we stated that claims of professional negligence, involving the exercise of professional skill and judgment, generally require a plaintiff to present expert testimony regarding the applicable standard of care against which to measure the acts of the defendant. Id. at 762-763 (1). This case does not present a professional negligence claim, and we are not persuaded by Southern Fiber and Turton's argument that expert testimony is required regarding industry standards for installing internet service cable. Although we agree that internet service occurs in a highly regulated

56

field and some aspects may require specialized knowledge presented by expert testimony, whether a service provider is permitted to enter an individual's property to install conduit is not regulated, and testimony regarding industry standards surrounding installation, while permissible, is not dispositive.

Moreover, questions of material fact exist regarding the industry standard for installing internet cable. Southern Fiber and Turton point to testimony from Allen Braddy indicating that he has installed internet components on behalf of internet service providers for tenants in numerous apartment complexes without express permission from the landowner. Braddy further referenced a few other utility and communication companies that utilize the same installation procedures. When cross-examined, however, Braddy testified that he has never seen a publication or any other writing, or been told in a seminar or by an attorney, that it is permissible to enter private property to provide internet service to a tenant without an owner's permission.

Dominick Tambone, on the other hand, a fiberoptics network engineer who trained AT&T employees, testified that large internet service providers, like AT&T, seek out and negotiate with property owners before installing fiber in an apartment

complex.[14] AT&T won't even perform work with an oral agreement; they require a written easement from the property owner. According to this expert, he did not know of any law or regulation that would permit a small service provider to enter private property to install cables without an easement or authorization from the property owner, and he believed these companies should at the very least pick up the phone and contact the property manager.

As we stated in Division 1, there are questions of material fact regarding whether Southern Fiber and Turton willfully trespassed on Woodstone's property or whether they were innocent trespassers. Southern Fiber and Turton's arguments do not require a different result. We therefore find no error in the trial court's denial of Southern Fiber and Turton's motion for summary judgment on Woodstone's trespass claim. It follows then, that Southern Fiber and Turton were not entitled to summary judgment on Woodstone's derivative claims for attorney fees and punitive damages. See *Tyler*, 272 Ga. at 120 (1) (a willful repetition of a trespass will authorize a claim for punitive damages); *KDS Properties, Inc. v. Sims*, 234 Ga. App. 395, 398 (3) (506

---

[14] Southern Fiber and Turton filed a motion to disqualify Tambone from testifying as an expert, and they assert that Woodstone did not object to the motion, but the record does not contain any order granting the motion or excluding any testimony. Further, Tambone could still testify as a lay witness regarding his personal experience. See *Xiong*, 226 Ga. App. at 128 (2).

SE2d 903) (1998) (the intentional tort of trespass will support a claim for expenses of litigation and attorney fees).

*Judgment in Case No. A20A1857 affirmed in part, reversed in part, and case remanded with direction. Judgment in Case No. A20A1884 affirmed. Miller, P. J., and Mercier, J., concur.*